## Margery Fiske *versus* Luther B. Fiske *et al.*

A mortgage was given by a son to his mother, who resided in his house, she having, as was alleged, the privilege of living there under the will of her husband, which mortgage was conditioned, that the son should " find her fire-wood for one fire, to be drawn and cut at the door fit for use." It was *held*, that the destruction of such house by fire did not exempt the son from the performance of the condition ; and that he was bound to furnish the wood at such place as she should make her home, provided it should be within a reasonable distance, regard being had to the distance which the fire-wooa had been customarily carried for family use.

After the destruction of such house, the mother took up her residence with another son, and demanded of the mortgager, that he should furnish her with fire-wood, to which demand he answered, that he was not obliged to furnish it at any place off of the farm ; she then demanded, that he should furnish it at the old place, tc which he replied, that he would see about it ; but no wood was furnished by him. It was *held*, that this was a sufficient demand by the mortgagee, and a refusal on the part of the mortgager, to furnish the wood.

It is no answer to the claim of the mortgagee, in such case, that she was at times living at some distance, she having pointed out a place where the mortgager might deliver the wood, within a reasonable and convenient distance.

The same mortgage was further conditioned, that the mortgager should keep a cow

for the mortgagee ; but the mortgagee was subsequently obliged to sell her cow at a low price in consequence of the cow's being improperly kept by the mortgager. I was *held*, that it was not necessary, in order to charge the mortgager with the cost of keeping a cow for the time subsequent to such sale, that the mortgagee should purchase a cow and tender her to the mortgager to be kept, the mortgager not having offered to keep another cow for her, nor given any assurance that one should be better kept.

THIS was an action upon a mortgage dated November 14, 1820, given by Clarke Fiske, deceased, to the derrandant, who was his mother. The tenants were administrators of the t state of the deceased.

It was admitted, that the condition of the mortgage had been broken ; and the question was, for what sum the conditional judgment should be entered.

From the report of an auditor appointed by consent of the parties, it appeared, that on August 1, 1820, Benjamin Fiske, who was the husband of the demandant and the father of Clarke Fiske, made his last will, providing among other things, that the demandant should have a certain room in his dwelling-house and "a privilege in the kitchen, buttery, up chamber and down cellar, during her natural life ;" and that, at the same time, he conveyed all his real estate to Clarke, and took back a mortgage conditioned, among other things, that Clarke should execute certain provisions in favor of the demandant as contained in the will.

The mortgage upon which this action was brought, was given immediately after the death of Benjamin Fiske, and was conditioned, that the mortgager, his heirs &c. would "provide a horse for said Margery [the demandant] to ride to meeting and elsewhere, when necessary, find her fire-wood for one fire, to be drawn and cut at the door fit for use, give her a good cow and keep said cow for her during the natural life of her the said Margery."

After the decease of Benjamin Fiske, the demandant selected a cow, and continued to live with Clarke, occupying that part of the dwellinghouse provided for her in her husband's will, until the spring of 1825, when she went to reside with one of her daughters. Previously to this time, complaints were made by the demandant in regard to the keeping of the cow ; and it was sufficiently proved, that during the winter

season, the cow was not kept in a suitable manner for a milch cow, and that notice of this fact was given to Clarke. In September, 1824, the cow not having improved in her condition, she was sold for the sum of $13. In the spring of 1826, an attempt was made to effect a settlement of the affair between the demandant and Clarke, in the presence of another son of the demandant. On this occasion the demandant claimed the amount of the cost of keeping a cow, she having been obliged to sell her cow in consequence of bad keeping ; but Clarke refused to allow any thing therefor, insisting, that he kept the cow as well as he did his own.

From 1825 to September, 1830, when Clarke's house was destroyed by fire, the demandant lived amongst her children, two of whom resided in Boston, but continued to make Clarke's house her home until it was burnt, at which time Clarke caused her things to be moved to the house of Jonathan Fiske, another son, which was at the distance of about a mile. The demandant was in Boston when the house was burnt, but returned soon afterwards and went to the house of Jonathan, where she lived during the ensuing winter. Clarke moved into another house at a short distance from the old one, and made preparations for building a new house. While the demandant was residing at the house of Jonathan, he went, by her desire, to Clarke and requested him to bring her some wood ; but Clarke replied, that he was not obliged to carry wood off the farm. The demandant thereupon desired Jonathan to tell him to carry the wood to the old place ; to this Clarke answered that he would see about it ; but no wood was furnished by him to the demandant. It appeared that there were rooms in the new house, which was four or five rods from the site of the old one, suitable for the accommodation of the demandant ; but there was no evidence, that she ever demanded such rooms, or that Clarke ever gave her notice that she might have them.

From the spring of 1831 to the spring of 1834, the demandant lived amongst her children, but principally with a daughter above mentioned, whose house was at the distance of about two miles from that of Clarke ; and after that time she resided constantly with such daughter.

Fiske
*v.*
Fiske

It further appeared, that, in 1834, Clarke, upon being requested to furnish his mother with wood, said he would furnish it ; but should not carry it off the place.

On November 10, 1835, Clarke died ; and on June 1, 1836, the demandant purchased a cow and caused her to be driven to the old place, where the tenants, who had been appointed administrators, lived, and demanded of them the keeping of the cow and also fire-wood to be delivered at the house of her daughter, where the demandant then lived ; but the tenants refused to comply with such demand.

The action was commenced on June 3, 1836.

Upon these facts the demandant claimed the amount of the cost of keeping a cow from September, 1824, the time when, as she alleged, she was obliged to sell her cow, to the time of the rendition of judgment in this action. She further claimed the value of a quantity of fire-wood sufficient for one fire, from the time of her return from Boston in September, 1830, when the request for wood was made on her behalf by Jonathan, as above stated.

*Oct. 2d.*
*C. Allen* and *Randall*, for the demandant.

*Merrick* and *Washburn*, for the tenants. The conditions of the mortgage in suit, were to be performed on the farm ; and Clarke was not bound to perform them elsewhere. He was exempted from the obligation to furnish the wood, by the destruction of the house, his mother being thereby deprived of the means of availing herself of her right to fire-wood under such mortgage. 2 Kent's Comm. (3d edit.) 507, 508 ; *Lobdell* v. *Hopkins*, 5 Cowen, 516 ; *Willington* v. *West Boylston*, 4 Pick. 103 ; 1 Story's Eq. § 103.

*Oct. 5th.*
SHAW C. J. delivered the opinion of the Court. This is an action of ejectment on a mortgage made by the defendants' intestate to the plaintiff. It is conceded that the condition has been broken ; and the question is, for what sum the conditional judgment shall be entered. The facts are presented upon a report of an auditor, to whom by consent the subject has been referred.

The condition of this mortgage was, to "provide a horse for said Margery to ride to meeting and elsewhere when necessary, find her fire-wood for one fire, to be drawn and cut a/

the door fit for use, give her a good cow and keep said cow for her, during the natural life of her, the said Margery."

Although the parties stood in the relation of mother and son, yet this mortgage is to be put upon the ground of contract made on a valuable consideration on the part of the mortager, and to enure as a legal and beneficial security to the mortgagee.

There is scarcely a more difficult branch of the law than that which regulates the rights and duties of parties to a contract for paying a debt in specific articles, and for delivering specific property at a future time. The difficulty is intrinsic, arising from the great variety of circumstances, attending the persons and the property and affecting the execution of the contract. The property may be bulky and heavy, or light and portable ; such as the vendor or contractor raises on his own farm, produces at his own workshop, commonly sells and delivers at his own warehouse, or otherwise in all respects. The parties may live near or remote from each other. Whether there should be a tender on the part of the party who is to deliver, or a demand by the party to receive, and when, where and how, in either case, is often a question of difficulty. The rules both of the common and civil law upon this subject are numerous and complicated. 1 Kent's Comm. 505. Perhaps the only rule to be extracted from all the cases is this ; that a court will look at all the circumstances of the case, the nature of the property, the residence, occupations and relations of the parties, the usages of the place and of the business to which the contract relates, and ascertain by reasonable inference, what the parties must have understood and mutually expected at the time of the making of the contract, and then adopt that construction which will best and most nearly carry the contract into effect as they intended and understood it.

Considering the subject in this point of view, the Court are all of opinion that upon the terms of the instrument and the relation in which the parties stood to each other, there is nothing to warrant the construction contended for by the defendants, that the wood was to be furnished to the mortgagee only at the house on the farm on which she then lived, which was afterwards burnt. Even supposing that the mortgagee had a privilege under the will of her deceased husband to live in

that house, which is very doubtful, as he had formerly con veyed the whole estate to his son by deed in his lifetime, still it was a privilege, which she might exercise or not, at her own choice.    The effect of the condition then is to furnish her with fire-wood sufficient to keep one fire, to be drawn and cut a the door fit for use.    The substance of the contract was, to furnish her with wood, at such place as she should make her home and place of residence, provided that it should be within a reasonable distance, regard being had to the distance at which such fire-wood had been and was customarily carried, for family use.    The circumstance, therefore, that the particular house, in which she had certain privileges, was destroyed by fire, did not exempt the mortgager from the performance of his contract, provided that she was ready and willing to receive the fire-wood at a reasonable and convenient place.    It sufficiently appears, from the report, that after the house was burnt in 1830, and after the mortgagee took up her residence with her other son, she demanded of the mortgager to furnish her with wood, to which he answered that he was not obliged to furnish the wood at any place off of the farm ; and that she then demand ed of him to furnish it at the old place, to which he replied that he would see about it, but he never furnished any.    We think, that in point of law there was a demand by the mortgagee and a refusal on the part of the mortgager, to furnish the wood agreeably to his contract, and that the damage she has sustained must be considered as continuing until his death.    It is no answer to this claim, that during this period she was some-times living with her children at some distance, as she had pointed out a place, at which he might deliver the wood, and that, the place originally contemplated and within a reasonable and convenient distance.    It would have been a compliance with the condition of his mortgage, if he had delivered it at that place.    It is not competent for the defendants to say, that she had no need of it.    She was entitled to it as of right, and it could not be legally or justly withheld from her.

The question in regard to the keeping of a cow, is attended with more difficulty.    It appears from the report, that after about three years from the date of the mortgage, during which the mortgagee had frequently complained that her cow was im-

properly and insufficiently kept, she was actually compelled to sell her cow, for a small price, on account of her being thus improperly kept. This was in the autumn of 1824. It further appears, that in the spring of 1826, an attempt was made to arrange this matter between the parties, in the presence of the son of the mortgagee, and brother of the mortgager. The former claimed the value of the keeping of the cow, on the ground, that she had been obliged to sell the cow, in consequence of bad keeping ; and this reason, as we now find by the report, was well founded. The mortgager refused to allow any thing, insisting, that he had kept her as well as he kept his own, which might well be true, consistently with the well founded complaint of the mortgagee. The question then is, whether, in order to charge the mortgager with the reasonable value of keeping the cow, the mortgagee was obliged to purchase a cow and tender her to the mortgager to be kept ; and the Court are of opinion that she was not. As the mortgager had failed to perform his obligation, and compelled the plaintiff to sell the cow ; and as upon an after application, she received no assurance, that in case of obtaining another cow, she would be better kept, and as he never afterwards offered to keep a cow for her, she was under no necessity, in order to charge him, to procure another cow, and tender her to him, at the risk of losing her for want of proper keeping. On these grounds, the Court are of opinion, that upon a breach of the condition, the plaintiff is entitled to recover the fair value of keeping the cow from the fall of 1824 to the time of making up the judgment.

The value of these items being reported by the auditor, the amount due will be computed upon the principles now stated, and the conditional judgment entered accordingly.