[No. 3612.    Decided April 29, 1901.]

NORTH WESTERN LUMBER CO., *Appellant*, v. CHEHALIS COUNTY *et al., Respondents.*

25   95
f25  672

TAXATION — OCEAN-GOING TUGS.

Ocean-going tugs, though registered at a foreign port and owned by a foreign corporation, are taxable under the laws of this state, when their *situs* is actually in this state.

ASSESSORS — TITLE TO OFFICE — COLLATERAL ATTACK.

The right of an assessor to his office cannot be collaterally attacked in an action to enjoin the collection of taxes levied upon property assessed by him.

Appeal from Superior Court, Chehalis County.—Hon. CHARLES W. HODGDON, Judge. Affirmed.

*Sidney Moor Heath,* for appellant.

*W. H. Abel,* Presecuting Attorney, for respondents.

The opinion of the court was delivered by

REAVIS, C. J.—Suit to enjoin the collection of taxes levied upon property belonging to appellant in Chehalis county. The assessor listed and assessed to appellant some reservoirs and lines of pipes in the town of Hoquiam, and also listed and assessed three steam tugs,—the Traveler, Astoria, and Printer. The complaint states that the acts of the assessor were invalid, and questions his right to his

office as assessor, and alleges that he arbitrarily, fraudulently, and maliciously overvalued personalty in the water works; that the tugs were ocean-going tugs, and in use wherever charters were available; that each was registered, under § 4319, Rev. St. U. S., at the port of San Francisco, and was assessed and paid taxes in the state of California; that plaintiff was a corporation organized under the laws of California and qualified to do business in the state of Washington. The superior court, after trial, found substantially the following facts: That the tugs Traveler, Astoria and Printer and the water works were assessed at a fair cash valuation required by law; that all the property mentioned was a part of the taxable personal property situate in Chehalis county, and said tugs, and each thereof, were so blended with the personal property in general situated in said county that it was impossible to distinguish it therefrom; that such property, and the whole thereof, was controlled at Hoquiam by the resident management of the plaintiff corporation, and each of said tugs was and has been engaged in plying wholly within the waters of this state. It concluded that the tax was legal and justly due, and rendered judgment dismissing the action.

The material controversy here is the validity of the assessment upon the three tugs. Counsel for plaintiff urges that, as these tugs were registered in the port of San Francisco, they are not liable to taxation in this state. The question is not entirely free from doubt. In 1854 the right to tax a vessel engaged in interstate commerce was considered by the supreme court of the United States in *Hays v. Pacific Mail Steamship Co.,* 17 How. 596. The facts were that the steamship company was incorporated under the laws of New York; that all the stockholders were residents and citizens of that state; that the principal office for transacting business was in the city of New

York, but the company had agencies in the cities of Panama, New Grenada, and San Francisco, California, and had a naval yard and ship yard for repairs at Benicia, California; that, on the arrival of the ships at the port of San Francisco, they remained no longer than to land passengers, mail, and freight, usually done in a day, then proceeded to Benicia for repairs and refitting until the commencement of the next voyage, usually some ten or twelve days; that the business they were engaged in was transportation of passengers and merchandise, treasure, and the United States mail between the city of New York and the city of San Francisco, by way of Panama, and between San Francisco and different ports in the territory of Oregon; that the company was the sole owner of the vessels, and no portion of the interests was owned by citizens of California; that the vessels were all ocean steamships, employed exclusively in navigating the ocean, and each of them was registered at the custom house in New York, where the owners resided; that taxes had been assessed upon all the capital of the company represented by the steamers in the state of New York under the laws of that state; that the vessels were assessed in the county of San Francisco, California, and the suit was to recover taxes paid under protest. The tax collector demurred to the complaint, and judgment was given for the plaintiffs. The court, in affirming the judgment, referred to the federal statutes of the 31st of December, 1792, and the 29th of July, 1850, which provide for the registration of vessels at the port which shall be at or nearest the owner, if there be but one, or if more than one, nearest the place where the husband or the acting and managing owner usually resides, and also the provision for the recording of bills of sales, mortgages, and conveyances in the office of

the collector of customs where the vessel is registered or enrolled, and observed:

"These provisions, and others that might be referred to, very clearly indicate that the domicile of a vessel that requires to be registered, if we may so speak, or home port, is the port at which she is registered and which must be the nearest to the place where the owner or owners reside."

In speaking of the vessels it was said:

"They are thus engaged in the business and commerce of the country, upon the highway of nations, touching at such ports and places as these great interests demand, and which hold out to the owners sufficient inducements by the profits realized or expected to be realized. And so far as respects the ports and harbors within the United States, they are entered and cargoes discharged or laden on board, independently of any control over them, except as it respects such municipal and sanitary regulations of the local authorities as are not inconsistent with the constitution and laws of the general government, to which belongs the regulation of commerce with foreign nations and between the states. . . . Besides, whether the vessel, leaving her home port for trade and commerce, visits in the course of her voyage or business, several ports, or confines her operations in the carrying trade to one, are questions that will depend upon the profitable returns of the business, and will furnish no more evidence that she has become a part of the personal property within the state and liable to taxation at one port than at the others. She is within the jurisdiction of all or any one of them temporarily, and for a purpose wholly excluding the idea of permanently abiding in the state, or changing her home port."

Again, in *Morgan v. Parham*, 16 Wall. 471, the facts were that a vessel, the Frances, was brought to Mobile, Alabama, which was duly registered at the port of New York, under the ownership of the plaintiff, according to the acts of congress. The plaintiff was, and had since remained, a citizen of New York, and the vessel was the

property of the plaintiff. The vessel was assessed as personal property in the city of Mobile. The tax remaining unpaid, the vessel was seized by the collector of the city. The owner brought an action for trespass against the collector for such seizure, and the collector justified by virtue of his tax warrant. The vessel was brought to Mobile in 1865. From that time until 1870 it had been employed as a coasting steamer between Mobile and New Orleans. In January, 1867, the vessel was regularly enrolled at the custom house by her master as a coaster, and license was issued in 1868 and 1869 as a coaster, and the Frances was one among several of a daily line of steamers plying between Mobile and New Orleans. The captain of the vessel was a resident of Mobile, and the agent conducting the business of the vessel at Mobile was resident there, occupying an office for such business, and paid the persons who assisted him, but was under the control of his superior agent, residing in New Orleans, who employed and paid the captain. A wharf and office in Mobile were occupied for the use of the vessels. They transported the mails, freight, and passengers between Mobile and New Orleans. The court held the tax was invalid, and said:

"The fact that the vessel was physically within the limits of the city of Mobile, at the time the tax was levied, does not decide the question. Thus, if a traveler on that day had been passing through that city in his private carriage, or an emigrant with his worldly goods on a wagon, it is not contended that the property of either of these persons would be subject to taxation as property within the city. It is conceded by the respective counsel that it would not have been. On the other hand this vessel, although a vehicle of commerce, was not exempt from taxation on that score. A steamboat or a post-coach engaged in a local business within a state may be subject to local taxation, although it carry the

mail of the United States. The commerce between the states may not be interfered with by taxation or other interruption, but its instruments and vehicles may be. It is not, therefore, upon this principle that we are to decide the case. . . . The imposition in this class of cases was a tax upon the use of the public waters of the country, and tended immediately to interfere with and to obstruct the commerce between the states. In the instance before us the tax was upon a vessel at the wharf. It was in this respect as if a tax had been laid upon lumber or cotton lying on the dock at Mobile. This vessel was owned by and employed in the service of a resident of the state of New York. It was primarily and presumptively taxable under the authority of that state, and of that state only."

And again the court concludes:

"It is the opinion of the court that the state of Alabama and no jurisdiction over this vessel for the purpose of taxation, for the reason that it had not become incorporated into the personal property of that state, but was there temporarily only, and that it was engaged in lawful commerce between the states with its *situs* at the home port of New York, where it belonged and where its owner was liable to be taxed for its value."

It is also said that it was immaterial whether the steamer, the Frances, was actually taxed in New York or not; she was liable to taxation there.

Again, in *Moran v. New Orleans*, 112 U. S. 69 (5 Sup. Ct. 38), a municipal ordinance of the city of New Orleans to establish the rate of license for professions, callings, and other business, which assessed and directed to be collected from persons owning and running towboats to and from the Gulf of Mexico and the city of New Orleans was adjudged to be a regulation of commerce among the states and invalid. It will be observed that the first two cases seem to put the invalidity of the tax upon the ground of an interference with commerce    among    the

states, the regulation of which is exclusively with congress; and in each instance the vessels were engaged in interstate commerce, and were only temporarily in the ports where the tax was attempted to be levied. We have been unable to find any adjudication of the supreme court of the United States specifically determining that the registry of the vessel conclusively fixes its *situs*. The registry is presumptive evidence of such *situs*. Counsel have, however, referred us to an authority (*Roberts v. Township of Charlevoix,* 60 Mich. 197, 26 N. W. 878), which seems to determine that a vessel enrolled, licensed, or registered under the United States navigation laws does not, by engaging in business within a state, become subject to its taxing power if the owner is a non-resident. Again, in the case of *Johnson v. DeBary-Baya Merchants' Line,* 37 Fla. 499 (19 South. 640, 37 L. R. A. 518), the facts were that the vessel was owned by a corporation of New York, with its headquarters and chief office in the city of New York, and was duly registered in the custom house at that port, and a tax had been regularly levied upon it in New York. The New York corporation maintained a line of boats on St. John's river for a portion of the year, engaged in the business incident to steamboats plying upon a river; but at different times the vessels went to any other waters which supported profitable engagements, and were engaged upon waters in other states. It was adjudged that the state of Florida could not levy a tax upon the vessels, the court observing:

"Under the admitted facts of this case we are of the opinion that the vessels of the appellee were not subject to taxation in Duval county. The vessels were owned by a New York corporation and had acquired a *situs* in that state by being duly registered in the port of New York,

the nearest to the residence of the owner, and were engaged in commerce in that state where, it is conceded, the most profitable employment could be procured for them. The mere fact of being employed in interstate commerce would not exempt them from taxation, and we do not say that registration in a foreign port and nonresident ownership should control absolutely, but such ownership and registration render them primarily and presumptively taxable only in their home port." ·

But in the well considered case of *National Dredging Co. v. State,* 99 Ala. 462 (12 South. 720), the facts were that the dredging company was a Delaware corporation, and the tugboat was registered at Wilmington, Delaware, and afterwards was in Mobile Bay for a long time, engaged in dredging in connection with other scows and machinery owned by the same company. The contract for dredging was with the government of the United States. The court observed of the tugboat Curtis:

" . . . a special consideration is advanced in support of its non-taxability. It is a sea-going vessel, propelled by steam, and is entitled to registry under statutes of the United States at the port of its owner's domicil. As a matter of fact, it is registered at the custom house in the city of Wilmington, Delaware. On this the contention is that that being home, it cannot be taxed elsewhere. There are many cases which hold that such vessel, engaged in commerce between its home port and others, or even wholly between other ports than that of its registry, can be taxed only at the port of registry. It is not our purpose to question these decisions; it is not necessary that we should. They all proceed upon the theory that vessels thus engaged are never in foreign jurisdiction except *temporarily,* and as an incident to the commerce to which they are devoted, and hence that they do not and cannot acquire a *situs* in foreign ports for the purposes of taxation; they do not become incorporated with the property of other states and countries which they touch intermittently, are never indefinitely there, and

their business, the work they perform, the uses to which they are put, is not done and performed within, and are not local to, the foreign state or country."

And the court concludes:

"The question, indeed, is at last one of *situs* in fact, and where this is shown neither foreign registry nor foreign ownership is of any consequence."

Sound reasons exist for the right of the state to tax these vessels that are permanently here transacting local business. They receive the full protection of the local government, and, if mere registry in another port is conclusive against the right to tax here, a boat can operate in our local waters, confined entirely to local business, and, if owned elsewhere, may evade all taxation in this state. Such construction should not be adopted unless imperatively demanded by superior authority. Under the revenue law of this state, personal property is taxed at its *situs,* and without reference to the residence of the owner.

We have examined the evidence in the record upon the exception made to the findings of the superior court and fully coincide with the findings. The evidence discloses that for from four to seven years the three tugs have been at Hoquiam, in Chehalis county; that their business has been towing in the waters of Gray's and Willapa Harbors in this state; that the corporation plaintiff, for some fifteen years last past, has owned and operated large saw mills, owns large areas of timber lands, and has manufactured from twenty to thirty million feet of lumber annually; that these tugs tow vessels usually from Hoquiam through the harbor to the ocean; that all contracts of towage are made by the captains of the respective tugs, who reside at Hoquiam; that the crews reside there; that the assistant secretary and manager of the company resides

there; that all accounts are rendered to him there; that the captains and crews are paid there, and the only absences of the tugs from these harbors shown by the record have been for the purpose of repairs. They appear to have been used for all these years as appurtenant to and a part of, the lumbering plant and business of the plaintiff in Chehalis county. Upon these facts, we conclude that the *situs* in fact of the three tugs is in Chehalis county, and that there was a valid assessment levied upon their value. The objection to the assessment upon the pipe lines and reservoirs has been considered, and we are not inclined to disturb the conclusion of the superior court upon such assessment. We do not think the objection to the right of the officer who made the assessment to his office can be made here. The record shows that he was certainly a *de facto* assessor, exercising properly all the functions of the office.

The judgment is affirmed.

DUNBAR, FULLERTON and ANDERS, JJ., concur.