## STANDARD DREDGING COMPANY, Complainant,

### *v.*

## SAMUEL D. GROMER, as Treasurer of Porto Rico, Respondent.

---

San Juan, Equity, No. 615.

1. The insular government of Porto Rico is without power to tax a dredge, scows, tug-boat, etc., belonging to a citizen of a state of the Union,

---

NOTE.—*Taxation; situs of property for purposes of.*—For various phases of this question and the presentation of authorities relating thereto, see the

Standard Dredging Co. v. Gromer.

who has no domicil in Porto Rico, and who temporarily brings such property into the bay of San Juan without landing the same, to execute a dredging contract in the area of the bay for the national government, that is wholly paid for by it. The situs of such property for purposes of taxation is not within the taxing jurisdiction of the insular authorities of Porto Rico.

2. The power of taxation is exercised upon the assumption of an equivalent, rendered in the protection of the property and person of the taxpayer, and if such equivalent cannot possibly be rendered because the property taxed is wholly beyond the jurisdiction of the taxing power, the taxation thereof amounts to the taking of property without due process of law.

3. In Porto Rico the navigable waters of the areas of harbors, bays, inlets, and rivers, and the submerged lands underlying the same are national property, and such submerged lands are not the property of the local government, as is the case in the several states of the Union.

Opinion filed September 11, 1909.

———

*Messrs. Hartzell & Rodriguez Serra,* attorneys for complainant.

*The Attorney General of the island,* attorney for respondent.

following editorial notes: Situs, for taxation, of debts evidenced by notes and mortgages, note to Boyd v. Selma, 16 L.R.A. 729; situs, for taxation, of debts evidenced by notes or mortgages held by agent residing in different state from principal, note to New Orleans v. Stempel, 44 L. ed. U. S. 174; situs, for taxation, of tangible personal property of domestic corporations, note to Teagan Transp. Co. v. Board of Assessors, 69 L.R.A. 431; when debt may have situs for the purpose of taxation apart from domicil of creditor, notes to Monongahela River Consol. Coal & Coke Co. v. Board of Assessors, 2 L.R.A.(N.S.) 637; Johnson County v. Hewitt, 14 L.R.A.(N.S.) 493; local situs within the state of tangible property of nonresident for the purposes of local taxation, note to Eoff v. Kennefick, 7 L.R.A.(N.S.) 704; as to what is home port of vessel for purposes of taxation, note to Olson v. San Francisco, 2 L.R.A.(N.S.) 197, 1196 Appx.; as to where ships are taxable, note to Johnson v. De Bary-Baya Merchants' Line, 37 L.R.A. 518.

Standard Dredging Co. v. Gromer.

RODEY, Judge, delivered the following opinion:

This is a bill in equity, brought by the complainant in an effort to enjoin the respondent, as treasurer of Porto Rico, from collecting taxes against its property. It alleges in substance, that complainant is a corporation of the state of Delaware, doing business under its laws, with its principal place of business in the city of Wilmington, in said state. That prior to April 1st, 1908, it entered into a contract with the United States of America, to perform certain services connected with the dredging of certain portions of the harbor of San Juan, Porto Rico, and the channel leading from the ocean into the same. That, by virtue of the requirements of said contract, complainant, prior to April 1st, 1908, brought from the state of Delaware into the harbor aforesaid the following property belonging to itself, that is to say: a dredge, a tugboat, two mud scows, a coal scow, and a launch; and has continuously since that date used the same in and about its operations in carrying out its said contract with the United States government, and for no other use or purpose; and that all of said property has at all times remained in and upon said harbor area. That all of the material dredged from the bottom of the entry way or channel from the ocean to the bay, and from and out of the bottom of the harbor area, is towed outside and dumped in the Atlantic ocean. The bill further alleges that complainant conducts no other business of any kind or character in Porto Rico, or in the waters adjacent thereto. That therefore complainant has no connection of any kind or character with the government of the island of Porto Rico, and has not brought any of its said property within the taxing jurisdiction thereof, nor is the situs of any of said property for

Standard Dredging Co. v. Gromer.

taxing purposes in said island. It is further alleged that, subsequent to April 1st, 1908, the respondent, as such treasurer of Porto Rico, pretended to assess and levy a tax against said property, under the taxing laws of Porto Rico, and was threatening to enforce the collection of the same by a sale of said property at the time this suit was filed.

The insular government, by its attorney general, demurred to this complaint, on the ground that the bill itself shows that complainant is not entitled to the relief prayed for; that it is without equity; and does not state facts sufficient in law to constitute a cause of action.

The issue thus raised is indeed an interesting one. Counsel on both sides, in addition to arguing the matter orally with ability, have filed strong written arguments and briefs. We have given careful attention to the positions urged, and can truthfully state that it has seldom been our lot to examine abler efforts in urging views upon a court. Whilst an examination of the adjudicated cases these arguments have referred us to has been very enlightening on the important subjects involved, it has also enabled us to reduce the contentions to a few well-settled propositions of law, to which we will endeavor to apply the admitted facts in order to enable us to decide the issue in accordance with settled law, as we believe it to have been expounded by the Supreme Court of the United States.

Complainant, as well as the respondent treasurer, being citizens of the United States, and the real respondent behind the treasurer being the government of Porto Rico, and the amount involved being a tax of $1,200, it would seem as if the jurisdiction here could not be questioned, because the citizenship of the parties is certainly diverse, and the amount involved ex-

V. Porto Rico—10.

Standard Dredging Co. v. Gromer.

ceeds, "exclusive of interest and costs, the sum or value of $1,000."

It surely is not necessary to cite authority for the proposition that ordinarily, where there is an adequate remedy at law, a court of equity is without jurisdiction to enjoin the collection of a tax. But we take it that, on principle, neither can it be gainsaid that where the allegation is that the tax is wholly unwarranted by law, and its collection is attempted by a sovereign or a quasi sovereign power that cannot be sued without its consent, a court of equity is the proper and only tribunal to afford proper relief in the first instance by enjoining the unlawful collection. In such a case a court of law cannot adequately deal with the situation. See Cooley, Taxn. 2d ed. pp. 760, 761, and cases cited from the state of Illinois and many other states, in note 1 to the text.. This, we think, disposes of the question of our jurisdiction on the grounds referred to, and leaves to be decided only the question as to whether, under the allegations of the bill, the property in question, under the circumstances, is subject to or can be taxed in Porto Rico.

It has, we think, been settled by numerous recent decisions of the Supreme Court of the United States, that the old rule of personal property following the domicil of the owner has been so varied and departed from as that it does not mean very much at the present time; the real question to be decided in every such case being whether the personal property,—be the same rolling stock, machinery, merchandise, or even floating property, such as steamships, boats, or dredges,—has been brought within the taxing jurisdiction of the government attempting to levy the tax. In other words, it must always be determined that the situs of the property is within the taxing

jurisdiction. See Old Dominion S. S. Co. v. Virginia, 198 U. S. 299, 49 L. ed. 1059, 25 Sup. Ct. Rep. 686, 3 A. & E. Ann. Cas. 1100, and the many cases cited. Also Ayer & L. Tie Co. v. Kentucky, 202 U. S. 409, 50 L. ed. 1082, 26 Sup. Ct. Rep. 679, 6 A. & E. Ann. Cas. 205, and cases cited, and Metropolitan L. Ins. Co. v. New Orleans, 205 U. S. 395, 51 L. ed. 853, 27 Sup. Ct. Rep. 499, and citations.

Not that it has arisen in this case on the allegations of the bill,—the fact being that we have no knowledge on the subject, and cannot presume any wrongful intention against complainant,—but because, under the circumstances, it might be well to note at this place that an attempt to escape property taxation in one state does not, as a general rule, confer jurisdiction on another state, not the residence or domicil of the owner, and within the taxing jurisdiction of which the property in question has not been brought, to tax such property. See Buck v. Beach, 206 U. S. 392, 51 L. ed. 1106, 27 Sup. Ct. Rep. 712, 11 A. & E. Ann. Cas. 732. Therefore, the controlling point here, as it appears to us, is: Can the government of Porto Rico tax property belonging to a citizen of Delaware, that has been merely brought into the harbor of San Juan in compliance with a contract entered into with the government of the United States to dredge the government's own harbor and the channel from it to the ocean, the work being paid for entirely by the United States itself, and the dredge, tug, and scows used in and about the work never having landed on the island, or the shores of the bay or harbor, but remaining in the harbor area (the launch only being used to communicate with the shores), and being continuously used there, and having absolutely no connection of any kind or character with the insular government, and presumably receiving no protection of any kind or character from it?

Standard Dredging Co. v. Gromer.

It is, perhaps, proper to notice at this point that the power of taxation is exercised upon the assumption of an equivalent rendered in the protection of the property and person of the taxpayer; and, if such equivalent cannot possibly be rendered, because the property taxed is wholly beyond the jurisdiction of the taxing power, the taxation thereof amounts to the taking of property without due process of law. This is what we think is the rule laid down by the Supreme Court of the United States in Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 50 L. ed. 150, 26 Sup. Ct. Rep. 36, 4 A. & E. Ann. Cas. 493.

This court, after careful consideration in the case of United States v. Hernandez, 2 Porto Rico Fed. Rep. 81, held that it has exclusive jurisdiction of offenses committed within the military and other national occupied reserves in Porto Rico. In the light of the arguments we used in that opinion, we think it fair to assume that, while the local insular government, in the absence of action by Congress, may make harbor rules and regulations not inconsistent with national law for the government of ships in the harbors of Porto Rico, still, the local government has no jurisdiction over such waters in the sense of a power to tax property belonging to a citizen of a state of the Union, when such property has never been landed on the actual shores of the island, and is used exclusively in and about the execution of a contract with the national government, and there is no fact or circumstance connected with the property to fix its situs in Porto Rico in the taxing sense. This court, and not the insular courts, is vested with admiralty jurisdiction in Porto Rico. Sec. 34, Foraker Law, 31 Stat. at L. 84, chap. 191. See opinion Atty. Gen. U. S. in Subig Bay matter (Philippines) 26 Ops. Atty. Gen. 91. In Porto Rico, all harbor areas,

Standard Dredging Co. v. Gromer.

navigable streams and bodies of water, and the submerged lands underlying the same, are national property over which the national government has not only the same "commerce clause" power and jurisdiction that it has as to similar locations in the several states of the Union, but also must, we submit, be conceded to have whatever additional powers over the same the fact of being such owner as well as being absolute sovereign over the whole island gives it. United States v. Hernandez, supra, and § 13, Foraker Law, supra; also act of Congress, July 1st, 1902, 32 Stat. at L. 731, chap. 1383. Hence, how can it be that property of complainant here, which, in the nature of things, gets no protection of any kind or character from the insular government as an equivalent, can be taxed? We might remark incidentally that the dredge in question is located in the bay in full view of our chambers as we write, and that it not only contains the derrick and machinery, but a two-story boarding house, so it seems even the help or workmen only come ashore as visitors, and this was virtually admitted on the argument.

In a state, which, within itself, is absolutely sovereign save for the rights and powers it has delegated to the national government, the taxing power, when it does not interfere with the commerce clause or the due-process-of-law clause of the Constitution, is not limited. See Braxton County Ct. v. West Virginia, 208 U. S. 192, 52 L. ed. 450, 28 Sup. Ct. Rep. 275.

In a territory that is not even incorporated into the United States, the taxing power can be scrutinized, and the local government will be confined within the powers conferred upon it by the national government.

In states of the Union, the taxing power is not interfered with by the nation unless it affects instrumentalities of the na-

Standard Dredging Co. v. Gromer.

tional government itself. We think in the case at bar the effect of the effort of respondent is to do that very thing; and hence the duty of this court, when that appears, is to say, "Hands off." On the facts set out in the bill and admitted in the argument, we are utterly unable to see that the insular government has anything to do with the property in question, or that it is in a position to give any equivalent for a right to tax it.

As before intimated, whether this property actually escapes taxation in the state of Delaware, although we understand its tugboat is registered there, is not the affair of the court or of respondent; nor can we take that into account, even should it prove to be the fact, in this controversy.

We have been cited to many cases from some of the former western territories, in which the local territorial governments were sometimes held to have power to tax cattle and other property pasturing or situated on and used wholly on or within Indian reservations; but it will be seen that such cases almost invariably turn on the question as to whether, by the different organic acts, such reservations were within or without the outer boundaries of the particular territory. We cannot find that any of them are in point as authority under circumstances such as surround the case at bar, where the waters and the lands under the same are national property, and the work being done is for the national government itself.

In the Hernandez Case, supra, we pointed out that, on February 16th, 1903, Session Laws, pp. 110–112, the legislative assembly of Porto Rico passed a rather comprehensive act ceding exclusive jurisdiction to the United States over any and all land that might be thereafter acquired by it in the island of Porto Rico, by purchase or condemnation, and over any and all

Standard Dredging Co. v. Gromer.

lands and the shores thereof, including streets and other public highways conveyed to it by the governor of Porto Rico under the provisions of that act; and over any and all lands in which any interest or claim of the people of Porto Rico might thereafter be released to the United States by the government of the island, as provided in that act, etc. It appears to us that it would indeed be a useless proceeding for the legislative assembly of Porto Rico to thus cede to the United States exclusive jurisdiction over lands which it was assumed the island had some interest in, unless it was also, at the same time, assumed that the national government already had exclusive jurisdiction over all other national property which it received under the treaty of Paris from Spain, and had never transferred to the insular government; and in this would, of course, be included all the harbor areas and navigable streams and bodies of water, and the submerged lands underlying the same, owned by the United States in Porto Rico, and not reserved to the nation under the act of Congress of July 1st, 1902 (32 Stat. at L. 734, chap. 1383). See also our opinion in Valdes y Cobian v. Grahame, 3 Porto Rico Fed. Rep. 422, where this point is considered.

Among the many cases we have been referred to, the two most nearly approaching the contention of the island here are those of the National Dredging Co. v. State, from the supreme court of Alabama, reported in 99 Ala. 462, 12 So. 720, and Northwestern Lumber Co. v. Chehalis County, from the supreme court of the state of Washington, reported in 25 Wash. 95, 54 L.R.A. 212, 87 Am. St. Rep. 747, 64 Pac. 909, and in which latter the Alabama Case is referred to and approved. However, an examination of those cases will show that, in each of them, the land underlying the navigable waters in the bay was property of the

state itself; while, in the case at bar, as stated, the title to such
land still remains in the national government. This cuts quite
a figure, as will be seen by an examination of the case of the
Central R. Co. v. Jersey City, 209 U. S. 473, 52 L. ed. 896, 28
Sup. Ct. Rep. 592, where it was held that "jurisdiction," in
compacts between states, has a more limited sense than "sover-
eignty;" and while, in 1833, the state of New Jersey gave ex-
clusive jurisdiction to the state of New York over waters of the
Hudson river west of the boundary line fixed by the agreement
as the boundary line between the states, still, the land underly-
ing the waters on the New Jersey side of such actual boundary
line remained the property of the state of New Jersey. By
analogy here, it would seem that because, for the purposes men-
tioned, such as the making of harbor regulations, etc., the insu-
lar government of Porto Rico may have more or less jurisdic-
tion in the bay of San Juan, still, because it has absolutely no
admiralty powers or jurisdiction therein, nor any title to the
land underlying such navigable waters, and cannot issue clear-
ance papers or sailing licenses or certificates of inspections of
steam boilers in boats, etc., it ought not to be held to be in a
position to give an equivalent for taxing property used wholly
within such harbor area and on the ocean outside, by a non-
resident, in executing a contract for the national government.
Valdes y Cobian v. Grahame, 3 Porto Rico Fed. Rep. 417, su-
pra, and cases cited.

It will also be noticed when examining the National Dredging
Co. Case, from the state of Alabama, supra, that at least one
of the scows, and perhaps other property, used in the dredging
for the national government in Mobile bay, were made right
there in the state of Alabama, and that all of the property in-

Standard Dredging Co. v. Gromer.

volved in that suit had remained there for four or five years, and that, under the circumstances (the appropriations being made by Congress were apparently annual ones), it was natural to presume that the property would be kept there for several years more, and its owners would become bidders upon future contracts for additional dredging work there, and keep the property indefinitely in that state; so that, in that case, there was no difficulty in fixing the situs of the property, because the property was clearly within the jurisdiction of the state of Alabama and the taxing power thereof. The court found that the property was not in that state temporarily, but indefinitely.

In the other case (North Western Lumber Co. v. Chehalis County) from the supreme court of the state of Washington, it will be seen on an examination of it that the court said: "Sound reasons exist for the right of the state to tax these vessels that are permanently here, transacting local business. They receive the full protection of the local government, and, if mere registry in another port is conclusive against the right to tax here, a boat can operate in our local waters, confined entirely to local business, and, if owned elsewhere, may evade all taxation in this state."

The tugs involved in that case had been in that state from four to seven years, engaged in private business; not, as here, working under a contract for the national government. Their owners had been engaged in that state for fifteen years, running large sawmills, and owned a large areas of timber lands, and manufactured from 20,000,000 to 30,000,000 feet of lumber annually. The tugs were, to all intents and purposes, property with its permanent situs in the state of Washington, and the owners tried to escape taxation by simply having them regis-

tered somewhere else, which, of course, as was properly held, could not be done. We do not think either of the cases, strong as they are, can be said to be parallel with conditions in the case at bar. We understand that the work in question is now practically completed, and that complainant is about to remove the property from Porto Rico.

Nothing we have said in this short review of this important subject can, in any manner, be taken as limiting the right of the government of Porto Rico, in a proper case, to tax tugboats, steamships, sailboats, and all other sorts of craft that move about in the harbors, bays, or inlets of the island, and do business locally from place to place, if the situs of the property is here, and the business done is of a private character between individuals. It was intimated on the hearing that our ruling in this case, if against the insular government, would, by implication, prevent the insular government from taxing personal property, ships, and boats in many other cases. We cannot admit that the ruling will necessarily have any such result. Each case must stand or fall as the facts surrounding it may warrant.

We have in this review cited but few cases. There are many issues and questions of law that are presented in the briefs of counsel that, while instructive, have no real bearing upon the single, real issue here, but the cases we have cited refer to most of them, and they can be seen by those interested in the subject.

We are therefore of opinion that the complainant is properly in this court of equity to enjoin the collection of a wholly illegal and unwarranted tax against it. That its property, for the reasons stated, has no situs within the taxing jurisdiction of

Standard Dredging Co. v. Gromer.

the government of Porto Rico. That this holding is not intended to preclude the government of Porto Rico from taxing this same complainant or any other complainant for the same or other property hereafter, if a situs is obtained with regard to it within the taxing jurisdiction of the government, by doing work for private individuals, or by doing work in unnavigable waters, or on land, or by purchasing locally manufactured dredges or tugboats, or in any other manner bringing the property within the actual taxing jurisdiction of the local government. The demurrer will therefore be overruled, and an order to that effect will be entered.