[No. 18013. Department Two. March 28, 1924.]

THE TOWN OF UNIONTOWN, *Appellant,* v. J. M. KLEMGARD *et al., Respondents.*[1]

TAXATION (45, 53)—PERSONAL PROPERTY—SITUS—PROPERTY CONNECTED WITH FARM—STATUTES—CONSTRUCTION. Wheat stored by farmers in a warehouse at "12 o'clock meridian" on March 1st, for which they took negotiable warehouse receipts, is subject to taxation by the town in which the warehouse is located, under Rem. Comp. Stat., §§ 11097, 11109, and 11328, providing for the time of assessment and that the assessor shall note on the rolls the town in which it is located, in view of other sections relating to the assessment of tangible personal property in the district or municipality of its situs; and wheat so stored for the purpose of sale is not "connected with the farm" on which it is grown, so as to be assessable where the farm is situated, under Id., § 11134.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered November 22, 1923, denying a writ of mandamus, after a hearing to the court. Reversed.

[1] Reported in 224 Pac. 610.

*E. J. Doyle* (*S. J. Chadwick,* of counsel), for appellant.

*W. L. LaFollette, Jr.,* and *S. R. Clegg,* for respondents.

FULLERTON, J.—The appellant, Town of Uniontown, a municipal corporation of the fourth class situated in the county of Whitman, sought in the court below a writ of mandate to compel the county assessor of Whitman county to place upon the assessment rolls, as property subject to tax by the municipality, certain grain stored in warehouses located within its corporate limits. The court denied the writ and this appeal followed.

By the terms of the statute personal property is listed and assessed annually, with reference to its value, at 12 o'clock meridian on the first day of March preceding its assessment. (Rem. Comp. Stat., §§ 11097, 11109) [P. C. §§ 6883, 6896]. A municipal corporation of the class to which the appellant belongs has alternate methods by which it may levy and collect taxes for municipal purposes. It may provide "by ordinance a general scheme" for their levy and collection, or it may adopt the assessment made by the county assessor and cause a levy to be made on the valuations of the property within its boundaries as returned by him after their equalization by the county board, and collect its taxes through the county treasurer. (Ib., § 11328 *et seq.*) [P. C. § 7041.] With reference to the latter method, the statute contains this provision:

"The assessment of said property shall be made by said assessor at the same time and in the same manner, and the property shall be listed and described in its proper order as to numerical arrangement on the rolls as the assessment is made and entered of the other property in the county. Said property shall be listed in its proper numerical order on the general assess-

ment-rolls of the county, and the assessor shall note on such rolls the fact that such property is situated in the town of........ (stating the name), and said assessment-roll shall be prepared with a column wherein to enter the amount of tax levied by such municipal corporation.'' Rem. Comp. Stat., § 11331.

The grain which the municipality sought to have listed for assessment purposes was grain grown upon farms owned by the growers of the grain, which they had stored in the warehouses before mentioned and for which they had taken negotiable warehouse receipts, and which they had suffered to remain in the warehouses until after ''12 o'clock meridian'' of the first day of March following the time of its storage.

The place at which tangible personal property shall be assessed, the statutes of the state, in the main, leave somewhat indefinite. With reference to certain kinds of such property, there are specific provisions. For example, it is provided that lumber and saw-logs shall be assessed in the county and assessment district where the same may be situated on the first day of March of any assessment year (Rem. Comp. Stat., § 11102) [P. C. § 6888]; that the personal property pertaining to the business of a merchant or of a manufacturer shall be listed in the town or place where the business is carried on (Ib., § 11103) [P. C. § 6890]; that the personal property of gas, electric and water companies, and the personal property of ''street railroad, plank road, gravel road, turnpike or bridge companies,'' shall be listed and assessed in the town or city where the same is located (Ib., §§ 11132, 11133) [P. C. §§ 6901, 6902]; and it is provided that: ''When the owner of livestock or other personal property connected with a farm does not reside thereon, the property shall be listed and assessed in the county or place where the farm is situated; if not listed in said county,

then to be taxed where found." (Ib., § 11134) [P. C. § 6903.]

There are other provisions of the statute relating to the place where tangible personal property is subject to assessment, which, while not so specific as the provisions above cited, lead to the conclusion that such property is taxable at the place of its situs. We have heretofore quoted § 11331, relating to assessments for municipal purposes where the method of assessment adopted is to assess upon the values as fixed by the county assessor. It will be noticed that the requirement there is that "said property" (that is to say, all taxable property, both real and personal, within the boundaries of the municipality) shall be listed in its numerical order, and that the assessor shall note on the assessment rolls the fact that such property is situated in the municipality. School districts and road districts are also made by the statutes special taxing districts. (Rem. Comp. Stat., §§ 4939, 6413) [P. C. §§ 5108, 6051.] The requirement with reference to the first is that the special tax shall be levied upon "all taxable property" in such school district, and that of the second is that the special tax shall be levied "on all taxable property in each road district," neither making an exception with respect to the residence of the owner of the property, unless such an exception is found in the word "taxable." But we cannot think the word will bear such a meaning. There is in every municipality and in every school district, and undoubtedly in most road districts, property which is specially exempt by law from taxation, and we think this word was intended to except from the words used property which, under the very general terms employed, would otherwise be included. With reference to property so situated, the statute has also made a special pro-

vision for its assessment and segregation upon the tax rolls. Section 11115 [P. C. § 6944] of the compilation of the statutes before cited provides:

"It shall be the duty of assessors, when assessing real or personal property, to designate the number of the school district and road district in which each person and each description of property assessed is liable for tax, which designation shall be made by writing the number of the districts opposite each assessment, in a column provided for that purpose in the detail and assessment list. When the real and personal property of any person is assessable in several school districts and road districts, the amount in each shall be assessed on separate detail and assessment lists, and all property assessable in incorporated cities shall be assessed in consecutive books, where more than one book is necessary, and separate from outside property and separately, and the name of the owner, if known, together with his postoffice address, placed opposite each amount."

These statutes, it seems to us, warrant the conclusion that it was the intent of the legislature to make tangible personal property, unless it was specially otherwise directed, taxable in the taxing district in which it has its situs on the first day of March of the taxing year. In no other way can effect be given to their evident purpose and meaning, and in no other way can justice be done to the taxing district in which the property is situated, which must, where the district is a municipality, at least, bear the burden of the governmental cost necessary for its protection.

Our cases heretofore determined bearing upon the question support the rule that such property is taxable at the place of its situs. In *Northwestern Lumber Co. v. Chehalis County*, 25 Wash. 95, 64 Pac. 909, 87 Am. St. 747, 54 L. R. A. 212, when speaking of the right of the local jurisdiction to tax steam tugs having a foreign registry, we used this language:

"Sound reasons exist for the right of the state to tax these vessels that are permanently here transacting local business. They receive the full protection of the local government, and, if mere registry in another port is conclusive against the right to tax here, a boat can operate in our local waters, confined entirely to local business, and, if owned elsewhere, may evade all taxation in this state. Such construction should not be adopted unless imperatively demanded by superior authority. Under the revenue law of this state, personal property is taxed at its *situs*, and without reference to the residence of the owner."

So in *North American Dredging Co. v. Taylor,* 56 Wash. 565, 106 Pac. 162, 29 L. R. A. (N. S.) 105, where a similar state of facts was before us, we said:

"The exceptions to the precept that property shall be assessed at the place where found either depends upon a statute or results as a rule of necessity to the state and of protection to the owner. Otherwise property would escape taxation altogether, or be subject to a tax wherever it might be found, thus leading to double taxation."

See, also, *Northwestern Lumber Co. v. Chehalis County,* 24 Wash. 626, 64 Pac. 787.

The trial court rested its conclusion, in part at least, on the ground that the wheat in the warehouses was "connected with the farm" of the respective growers and was thus assessable in the taxing districts in which the farms on which it was grown were situated, and not elsewhere. But we are not able to concur in this view. Personal property of this character can be said to be "connected with the farm," within the meaning of those words as they are used in the statute, only when it is on the farm, or temporarily stored elsewhere with the purpose of returning it to the farm for use thereon. The record here is silent of any such intent on the part of any of the owners of the grain in question. As the record appears, it was

stored in the warehouses for the purposes of sale, and was effectually and permanently removed from the farm.

Our conclusion is that the trial court was in error in refusing to grant the writ of mandate, and its judgment will be reversed and the cause remanded with instructions so to do.

MAIN, C. J., BRIDGES, PEMBERTON, and MITCHELL, JJ., concur.