DONALD W. BAIN, State Treasurer, v. THE RICHMOND & DAN-
VILLE RAILROAD COMPANY.

*Taxation—Inter-State Commerce.*

The rolling stock of a non-resident railroad corporation passing through
the State for purposes of inter-State commerce is not liable to
taxation in this State.

This was a CIVIL ACTION, tried before *Armfield, J.*, at
October Term, 1889, of the Superior Court of WAKE County.

The plaintiff is the Treasurer of North Carolina. The
defendant is a corporation of the State of Virginia and has
a lease of the railroad of The North Carolina Railroad Com-
pany, a corporation of this State, and it does the business
of transporation in, through and across this State, from the
State of Virginia and other States, to the State of South Caro-
lina and other States.

The purpose of this action is to recover the sum of $350
as taxes alleged to be due this State from the defendant and
for costs.

The following are the facts found by the Court below, and
its judgment thereupon:

"1. The Richmond & Danville Railroad Company was,
on June 1, 1888, the owner of $17,500 worth of rolling
stock, to-wit, four "switching engines" and "one coach,"
which were, on June 1, 1888, used exclusively in North
Carolina, but owned in Virginia, and which the company
may at any time recall.

"2. Upon all the rolling-stock of the Richmond & Dan-
ville Railroad Company, the company is assessed for tax-
ation, and does pay taxes, in Virginia.

"3 The rolling stock of the North Carolina Railroad Company is used exclusively in North Carolina, and upon all this rolling stock, of the asses ed value of $125,000, taxes are assessed and paid in North Carolina by the Richmond and Danville Railroad Company, the lessee.

"4. The board of appraisers and assessors of the North Carolina Railroad made the assessment, as set out as an exhibit to complaint, of $175,000 upon the rolling stock of the Richmond and Danville Railroad Company in use in North Carolina, on June 1st, 1888.

"5. On June 1st, 1888, there was in use on the North Carolina Railroad, leased by the Richmond and Danville Railroad, in North Carolina, rolling stock passing through the State to the value of $175,000. Such rolling stock was owned by the Richmond and Danville Railroad Company, and the trains in which said rolling stock was used were made up outside of North Carolina and went on through to the State of South Carolina.

"Upon this state of facts, his Honor ruled that the defendant company was liable to pay taxes to the State upon $17,500 (on the engines and coaches used exclusively in North Carolina), and was not liable to pay upon $157,500, the remainder, used in inter-State commerce.

"Therefore, it is adjudged that the plaintiff recover of the defendant the sum of $350 and interest from July 1st, 1888, and costs."

*The Attorney General* and *Mr. R. H. Battle,* for the plaintiff. *Mr. C. M. Busbee,* for the defendant.

MERRIMON, C. J.—after stating the facts: The power and right of the State to tax property of non-residents, whether these be natural or artificial persons, having its *situs* within the State for the purposes of business, con-

venience or pleasure of the owners thereof, or others, is too well settled to admit of serious question. This important right of the State is surely founded upon the just ground that such property has the protection, advantage and benefit of the laws of the State, and it ought, on that account, to be required to contribute as taxes its fair share towards the support of the government whose benefits extend to it, not merely casually, but regularly and continuously, while it continues to be so located, as does other like property of residents of the State. Upon principles of common justice, every property-owner should contribute to the support of the government that protects and renders his property valuable and useful his fair proportion of money as a consideration therefor, unless, for some proper cause, he is excused from doing so *Albany* v. *Powell*, 2 Jones' Eq., 51; *Redmond* v *Commissioners*, 87 N. C., 122, and numerous cases there cited; *Worth* v. *Commissioners*, 90 N. C., 409; *Ferry Co.* v. *Pennsylvania*, 114 U. S., 196; *Thompson* v. *Pacific Railroad Co.*, 9 Wall., 579; *Railroad Co.* v. *Peniston*, 18 Wall., 5; *Telegraph Co.* v. *Texas*, 105 U. S., 400; *Telegraph Co.* v. *Massachusetts*, 125 U. S., 530; *Leloup* v. *Port of Mobile*, 127 U. S., 640.

If the State were absolutely sovereign in all respects, it might tax property coming into it temporarily from another State for the purpose of trade, or property passing across its territory from one State to another or other States in the course of trade, travel and commerce. It might tax such trade and travel in the discretion of its Legislature. But as a member and constituent part of the Federal Union, it does not possess unlimited powers of taxation as to all property, matters and things that might otherwise be deemed and made subjects thereof. It and its authorities, including its Courts of Justice, are bound by the Constitution of the Union, and it is its and their duty to observe, administer and enforce its provisions in proper cases and connections, as much

so as its own Constitution and laws. Indeed, the Constitution of the United States is a part of the organic law of this State, and, in principle and theory, there is not, and cannot be, any conflict between the Constitution and laws of the United States and the same of this State. If conflict, in fact, exists in any respect, as, unhappily, is sometimes the case, this is so because those who determine what the law is, administer and enforce it, are ignorant of or misapprehend its true meaning and application, or wilfully disregard and disobey it.

A leading and very important purpose of the Federal Union was to establish and secure the freedom of trade and commerce, both foreign and domestic, and particularly for the present purpose, between and among the several States comprising it. To this end it is provided in its Constitution, Art. I, §3, par. 3, that "the Congress shall have power * * * to regulate commerce with foreign nations and among the several States and with the Indian tribes." The power thus conferred is indefinite as to its scope, and capable of very latitudinous interpretation and exercise, particularly as it is part of the organic law, and the subject to which it relates is one of great breadth and compass. It is difficult to determine its just limit in many respects, but it should receive a reasonable interpretation, such as will effectuate the purpose contemplated, trenching as little as practicable upon the powers, rights and convenience of the States. Very certainly the provision implies that Congress shall *regulate* such commerce and the State shall not; that Congress shall do so effectually, in such way and by such means as will secure, promote and encourage the same, and that the States shall not, if disposed to do so, interfere with, destroy, hinder or delay the same, or divert it in any way by any legal constraint for their own advantage, otherwise than to a very limited extent, as allowed by

the Constitution.    Hence, it is settled that a State cannot tax commerce, trade, travel, transportation, or the privilege to carry on and conduct the same, or the vehicles, means and appliances employed and used in connection therewith, coming into that State from another temporarily, however frequently, and returning to such other State; nor can it tax such commerce, or such incidents thereto, passing across it from another or other States to another or other States, however often this may be done.    And the reason is, that to so tax such commerce and the incidents thereto, including such means of transportation, would tend directly, and have the effect in a greater or less degree and like extent, to interfere with the freedom of commerce among and between the people of the States    It would have the certain effect to embarrass, hinder and delay the free course of such trade. If a State could thus tax such commerce at all, it might, in its discretion, for its own benefit and advantage, tax it so heavily as to practically destroy it within its own borders, and, in possible cases, prevent it from passing freely into other States.    Moreover, if one State might tax it, every State through which it passes might do so likewise, and thus the power of Congress to regulate inter-State trade and commerce would be nugatory and a sheer mockery.    It is clear that a State has no such power, and the Supreme Court of the United States has authoritatively so decided, directly and in effect, in many cases.    *Hayes* v. *Steamship Co.*, 17 Howard, 596; *Morgan* v. *Purham*, 16 Wall., 471; *Ferry Co.* v. *Pennsylvania*, 114 U. S. Rep., 196, and numerous cases there cited; *Pickard* v. *Pullman Co.*, 117 U. S. Rep., 31; *Leloup* v. *Port of Mobile*, 127 U. S. Rep., 640.

The statute (Acts 1887, ch. 137, §§ 44–51), properly interpreted, does not, and was not intended to, embrace and to tax the property of the defendant put in question by this appeal.    It had reference to and embraced property of cor-

porations, whether resident or not, whose property was situated, had a *situs*, in this State, and was thus subject to be taxed. But the property in question was not, in a legal sense, located—situated—in this State; it had no *situs* here. It was the property of a non-resident corporation, employed and used by it constantly for the purposes of transportation in the course of the conduct of inter-State trade and commerce coming into and passing across this State from another and other States to and into another and other States It was not stationary, but constantly in *transitu* from one State to another The mere fact that property of the defendant of the value mentioned was continuously within the State, did not give it a *situs* here; it was continually changing, and in *transitu* in the course of inter-State commerce. It was so continuously in the State, day and night, because of the great volume of trade and travel passing over the defendant's road into and across this State going to other States. It is true, as suggested on the argument, that such property receives protection from this State, and has benefit of its laws, but, nevertheless, it is not the subject of taxation, because the Constitution of the United States will not, as we have seen, allow it to be made such subject.    Judgment affirmed.

                                        No error.