[No. 13003. Department Two. February 29, 1916.]

CANADIAN PACIFIC RAILWAY COMPANY, *Appellant*, v.

KING COUNTY *et al., Respondents.*[1]

TAXATION—PROPERTY SUBJECT—RAILROAD ROLLING STOCK — STATUTES—CARS OF FOREIGN COMPANY—SITUS. Where a foreign railroad company had an operating agreement with a company having a railroad line in this state, whereby three of its through eastern passenger cars were, each day, taken at the state boundary line and run through several counties of this state to the city of S. and returned, under a profit sharing agreement, the cars are assessable for taxation as the property of the foreign company, either as operating railroad property, or as ordinary personal property, under Rem. & Bal. Code, § 9142, subd. 3, providing that "property of the railroad company" as used in the chapter relating to taxation "shall include all . . . rolling stock equipment . . . used or employed in the operation of the railroad or in conducting its business," and 3 Id., § 9152, providing that "the rolling stock and other movable property belonging to any railroad company or corporation, shall be considered personal property and shall be assessed and taxed as such;" since the first section, giving the state tax commissioners power to assess railroad operating property, is not confined to railroad companies having lines in this state, and under the last section, the foreign company maintained the situs of the cars in this state, although the same three cars are not continuously in the state (BAUSMAN, J., dissenting).

[1]Reported in 155 Pac. 416.

SAME—APPORTIONMENT TO COUNTIES. The state tax commission has supervisory power to direct the assessment and distribution of a railroad company's rolling stock ratably among the several counties in which it is used.

Appeal from a judgment of the superior court for King county, Jurey, J., entered August 5, 1915, in favor of the defendants, upon an agreed statement of facts, in an action to enjoin the collection of a tax. Affirmed.

*Bogle, Graves, Merritt & Bogle*, for appellant.

*The Attorney General* and *Edward W. Allen, Assistant*, for respondents.

HOLCOMB, J.—In this action appellant sought to cancel and annul the taxes against its property in King county and make a test case as to taxes not only in King county but also in the counties of Snohomish, Skagit, and Whatcom. The case was tried upon an agreed statement of facts, and judgment rendered in favor of respondents. On March 1, 1913, the state board of tax commissioners undertook to find and determine the value of appellant's railroad property subject to taxation within the state at that time; found personal property which it determined to be of the value of $139,000, and thereafter prepared assessment rolls and entered that sum thereon as the value of appellant's property. Afterwards the state board of equalization equalized this value for taxation purposes at the sum of $52,905, and apportioned that value to the various counties above named into and through which passenger cars of appellant, assessed as stated, were hauled, according to the classification and value thereof, in such proportion to the entire value thereof as the length of the line in each of the counties bore to the entire length of the line between Seattle and Sumas. The sum of $10,847 was apportioned by the state board to King county as the equalized value of appellant's railroad property, equipment, and rolling stock assessable within King county.

Appellant is a corporation organized and existing under and by virtue of the laws of the Dominion of Canada, and during all the times herein mentioned has owned, maintained, and operated a line of railway within the Dominion of Canada. On or about June 1, 1912, appellant made and entered into a certain written contract with the Northern Pacific railway company, a copy of which is attached to and made a part of the respondents' answer herein, and on March 1, 1913, when the purported assessment was made, this contract was in full force and effect. Under and by virtue of the contract, in the conduct of transcontinental passenger traffic, appellant daily delivers to the Northern Pacific company at Sumas, on the international boundary line, three cars of its regular transcontinental trains, consisting of a standard sleeping car, a tourist sleeping car, and a dining car. The Northern Pacific company hauls these cars over its own track in its train from Sumas to Seattle daily, and returns them the next day from Seattle to Sumas, where they are delivered to the appellant and placed in one of its regular transcontinental trains. The object of this arrangement is obviously to obtain passenger traffic between Puget Sound points and the East by giving continuous passage in either direction without change of cars, sleepers or diner. The Northern Pacific train crews handle the cars within the state of Washington.

It is undisputed that appellant is the actual owner of the three passenger cars involved in this controversy. It is undisputed that the amount of the tax, so far as the value of appellant's property is concerned, is not questioned in this proceeding, and that there is no inequality as to the ratio or amount between such assessment and the assessment of other property in King county.

The contentions of appellant are briefly these: That the tax assessed is a claim against appellant collectible, if valid, out of any of its property, and not merely a tax on account of the value of these particular cars; that the tax, as a tax against appellant on account of these cars, is invalid for

three reasons, viz.: (1) Because appellant's domicil is in Canada and, for taxation purposes, all its personal property, including these cars, had a situs in Canada, and was assessable against it only in Canada, unless, by reason of permitting the Northern Pacific company to haul these cars in this state under the contract in question, it gave the cars a situs also in this state as its property; (2) that even if the legislature had power to provide for the assessment of these cars as appellant's property and the collection of a tax thereon, nevertheless the law in this state authorized an assessment by the state board of railway cars only as operating railroad property of a railway company owning or operating a line of railway in this state, and that, under the undisputed facts, it was not such an operating railroad within this state; and (3) that, even if appellant were mistaken in both of the foregoing claims, still the state board, in making the assessment in question, clearly failed to comply with the mandatory requirements of the law relative to levying such assessments, so as to make the one in question void.

Appellant concedes that, if this property is operating property, the tax might be levied upon it against the Northern Pacific company, which it claims actually used and operated cars within the state and which, under the express terms of the statute, was the owner of the cars for the purpose of taxation.

The contract between the Canadian company and the Northern Pacific company provides, in substance, that at least one daily passenger train shall be run each way between Sumas and Seattle to haul the Canadian company's equipment from and to points in the East, such train to be timed to connect at the transfer point—Sumas—with the express train of the Canadian company; that each company shall handle the trains on its own lines by its own employees and at its expense; that berth or seat earnings in sleeping, parlor, or similar cars shall belong to the company furnishing the

cars; that no charge shall be made for transfer at the transfer point, but the receiving company shall perform the transfer free of charge to the other company. Other terms of the contract provide for divisions of traffic and interchange between points beyond the line of either of the contracting companies upon certain specified basis. Under these conditions, appellant claims that it is not an operating railroad company within the state of Washington, and therefore does not come within the provisions of § 8 of the act of 1907, giving the state board of tax commissioners power to assess railroad operating property; that, if these cars are to be considered operating property, they must be considered as the property of the Northern Pacific railway company and assessed to it; that, if considered as mere chattels or personal property, they have no situs within the state of Washington.

The case of *Hays v. Pacific Mail Steamship Co.*, 17 How. 596, is cited as in point, where the question involved was the right of the state. of California to assess an ocean steamer owned and registered in New York and regularly plying between Panama, San Francisco, and ports in Oregon, remaining in San Francisco no longer than was necessary to land and receive passengers and freight. The case of *Bain v. Richmond & D. R. Co.*, 105 N. C. 363, 11 S. E. 311, 18 Am. St. 912, 8 L. R. A. 299, is also cited to the effect that cars used by a railway company in interstate commerce over a line of railway leased and operated by it in the state of North Carolina were not subject to taxation within that state. We do not regard these cases as strictly in point. In the first case cited, obviously, ocean vessels, having their situs fixed by act of Congress and their course over navigable waters, and touching land only incidentally and temporarily, have no such situs as would authorize local taxation; and cars or vehicles merely passing through one state, although regularly, would be similarly situated. *Pullman's Palace Car Co. v. Pennsylvania*, 141 U. S. 18.

We regard the general rule to be that tangible personal property is subject to taxation by the state in which it is, no matter where the domicil of the owner may be.

"It is equally well settled that there is nothing in the constitution or laws of the United States which prevents a state from taxing personal property, employed in interstate or foreign commerce, like other personal property within its jurisdiction." *Pullman's Palace Car Co. v. Pennsylvania, supra.*

See, also, *Old Dominion Steamship Co. v. Virginia,* 198 U. S. 299.

In *Passenger Cases,* 7 How. 283, at page 402, it was said:

"A state cannot regulate foreign commerce, but it may do many things which more or less affect it. It may tax a ship or other vessel used in commerce the same as other property owned by its citizens."

These principles were approved and reaffirmed in effect in the following cases: *Western Union Tel. Co. v. Taggart,* 163 U. S. 1; *Adams Express Co. v. Ohio State Auditor,* 166 U. S. 185; *American Refrigerator Transit Co. v. Hall,* 174 U. S. 70; *New Orleans v. Stempel,* 175 U. S. 309; *Bristol v. Washington County,* 177 U. S. 133; *Union Refrigerator Transit Co. v. Lynch,* 177 U. S. 149; *Atlantic & Pacific Tel. Co. v. Philadelphia,* 190 U. S. 160; *Kehrer v. Stewart,* 197 U. S. 60; *Union Refrigerator Transit Co. v. Kentucky,* 199 U. S. 194.

We consider the situation existing in this case somewhat similar to that in the case of *Pullman's Palace Car Co. v. Pennsylvania, supra.* In that case, it is true, the state imposed a tax on the capital stock of all corporations engaged in the transportation of freight and passengers within the state, under which the Pullman company, engaged in running railroad cars into, through, and out of the state, and having at all times a large number of such cars within the state, was taxed by taking as a basis of assessment such pro-

portion of its capital stock as the number of miles of railroad over which its cars are run within the state bore to the whole number of miles in it and other states over which its cars were run, instead of basing the tax directly upon chattels or personal property. In that case it was stated:

"The cars of this company within the state of Pennsylvania are employed in interstate commerce; but their being so employed does not exempt them from taxation by the state; and the state has not taxed them because of their being so employed, but because of their being within its territory and jurisdiction. The cars were continuously and permanently employed in going to and fro upon certain routes of travel. If they had never passed beyond the limits of Pennsylvania, it could not be doubted that the state could tax them, like other property, within its borders, notwithstanding they were employed in interstate commerce. The fact that, instead of stopping at the state boundary, they cross that boundary in going out and coming back, can not affect the power of the state to levy a tax upon them. The state, having the right, . . . could tax the specific cars which at a given moment were within its borders. The route over which the cars travel extending beyond the limits of the state, particular cars may not remain within the state; but the company has at all times substantially the same number of cars within the state, and continuously and constantly used there a portion of its property: . . ."

So, in the present case, it is conclusively established that appellant owns three cars which are regularly used and employed in railroad business within this state and within and traversing the counties heretofore mentioned. It is true that identically the same cars are not used continuously, but the same number of cars are used daily. They are operated in much the same manner as the Pullman company's cars were operated by railroads in the state of Pennsylvania. Under the contract, the Northern Pacific company may be deemed to be the agent and partner of the Canadian company in operating its cars within the state of Washington for a portion of the earnings of the cars, the Canadian company own-

ing and furnishing the cars and the Northern Pacific com-
pany owning and furnishing the railway track and carrying
the cars back and forth for the Canadian company. It can-
not be justly asserted that the Canadian company derives no
profit from the use and operation of the cars. It is patent
that it does not merely loan the cars to the Northern Pacific
company for the accommodation of the latter. It undoubted-
ly derives a steady revenue from the use and operation of the
cars. It would be immaterial whether or not it derived any
profit whatever if its personal property became incorporated
in the mass of personal property within this state. Neither
do we consider it material whether this property is to be as-
sessed as railroad operating property or as merely personal
chattels. The object to be attained by requiring the assess-
ment of railroad property operating partly within this state
and partly within other states was to distribute the taxes of
the assessed operating company equitably so as not to com-
pel the operating company to pay excessive, unjust, or double
taxes, and also to avoid putting an undue burden and re-
straint upon interstate commerce. The result obtained here
is the same.

The statute which has been referred to, Rem. & Bal. Code,
§ 9142, subd. 3 (P. C. 501 § 283), is as follows:

"The term 'property of the railroad company' as used in
this chapter, shall include all franchises, right of way, road-
bed, tracks, terminals, rolling-stock equipment and all other
real and personal property of such company, used or em-
ployed in the operation of the railroad, or in conducting its
business, and shall include all title and interest in such prop-
erty, as owner, lessee or otherwise. . . ."

It is undisputed in this case that the cars in question are
rolling stock or personal property the title to which, so far
as the record shows, is wholly in the Canadian company. The
Northern Pacific company is not the lessee or the owner, and
has no interest in the cars in controversy except as joint
operator.

Another statutory provision, Rem. & Bal. Code, § 9152, as amended, is as follows:

"And the rolling stock and other movable property belonging to any railroad company or corporation shall be considered personal property and shall be assessed and taxed as such." 3 Id., § 9152.

Under either statute, we consider that the state tax commission has the right to assess the cars in question—either as operating railroad property or as ordinary personal property—to the true owner thereof, the Canadian company, which maintains the situs of the cars in this state.

The state tax commission also had supervisory power to direct the assessment and its distribution among the several counties ratably. *Great Northern R. Co. v. Snohomish County*, 48 Wash. 478, 93 Pac. 924; *Great Northern R. Co. v. Snohomish County*, 54 Wash. 23, 102 Pac. 881; *Northern Pac. R. Co. v. State*, 84 Wash. 510, 147 Pac. 45.

It does not seem necessary to further incumber this decision with authorities. The assessment was legal, and the judgment of the lower court was right and is affirmed.

MORRIS, C. J., PARKER, and MOUNT, JJ., concur.

BAUSMAN, J. (dissenting)—That the Canadian Pacific company had property within this state subject to taxation is plain, for if it did not operate the cars it at least owned them, and had they been destroyed by a mob it would undoubtedly have invoked recompense from our local authorities. Taxes are tribute exacted for protection bestowed.

But it does not follow because these cars could have been taxed that they have been properly taxed. They were railway property and, being such, could be taxed only in the way prescribed by statute, which, in my opinion, has not been done in the present instance. Since this railway's property is "partly within and partly without the state," the statute plainly commands the taxing authorities to proportion the volume of property within Washington to what was outside

of it. The quoted end of 3 Rem. & Bal. Code, § 9152, was not, in my opinion, intended to let the board ignore, in assessing rolling stock, the distinction between within-state and interstate railways. For that clause there were other uses, such as the date and manner of enforcing the taxes unpaid. The authority of the board rested only in the statute. It cannot be even said that, upon my view, the legislature left these cars open to escape taxation. Not only could they have been assessed on the interstate basis to the Canadian Pacific company, but if there was any doubt about that they could, under the plain law, have been assessed to the company that was manifestly operating them, the Northern Pacific railway company.

I therefore dissent.