[No. 13952.  *En Banc.*  May 18, 1917.]

UNITED STATES WHALING COMPANY, *Appellant*, v. KING COUNTY *et al.*, *Respondents.*[1]

TAXATION — WHALING VESSELS — SITUS — HOME PORT.  Whaling vessels, owned by a corporation of another state, not engaged as common carriers, acquire an actual situs and are taxable at their home port in this state, where it appears that they are there fitted out and equipped each year for the only voyages in which they engage, which occupy less than half the year, and to which they return at the end of the season and are moored for the remainder of the year.

APPEAL—REVIEW—STIPULATED FACTS—CONCLUSIONS.  A statement in stipulated facts that whaling vessels are only temporarily in the state of Washington will be disregarded as a mere conclusion or deduction, where the actual facts are shown.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered August 24, 1916, upon granting a nonsuit, dismissing an action to enjoin the collection of a tax.  Affirmed.

*Huffer & Hayden*, for appellant.

*Alfred H. Lundin* and *Edwin C. Ewing*, for respondents.

FULLERTON, J.—In this action the United States Whaling Company, a corporation, seeks to enjoin the collection of certain taxes levied for the year 1915, by the county of King, State of Washington, upon three steam whaling vessels known as Star I, Star II, and Star III, the property of the corporation.  The pleadings are appropriate to the issues raised and need not be further noticed.  At the conclusion of

[1]Reported in 165 Pac. 70.

the evidence introduced at the trial, the court decided that the vessels had acquired an actual situs in the county of King and were subject to taxation therein, entering a judgment of dismissal with costs against the complainant. This appeal is from the judgment so entered.

The facts were in part stipulated, and in part shown by oral evidence given at the trial. The appellant corporation was organized under the laws of South Dakota, with its main office at the city of Huron, in that state. It is authorized to transact business in the state of Washington in virtue of having filed its articles of incorporation with the secretary of state of the state of Washington, having appointed a statutory agent who resides therein, and having otherwise complied with the state laws relative thereto. The business of the corporation is under the direction of a board of directors, five in number, one of whom resides at Huron, South Dakota, one at Glasgow, Scotland, two at Sandefjord, Norway, and one at the city of Seattle, Washington. By its articles, wide and diverse powers are conferred upon the corporation, among which is the power to engage in the business of whale fishing and to dispose of the products thereof. Its articles also empower it to establish branch or business offices at a number of named places, at which the company can hold meetings of its stockholders and directors, among the places so named being Seattle, Washington. It is not disclosed that the corporation engaged in any business other than that mentioned. In the prosecution of this business, it constructed the vessels named, in the city of Seattle, in the year 1912, causing them to be registered as of the port of Ketchikan, Alaska. The vessels are not engaged in the general carrying trade. At the opening of the whaling season of each year, about the beginning of May, they are fitted out at Seattle and sent north to Alaskan waters, where they engage in whaling until the close of the season, about the first of October, when they are returned to the same place and moored for the winter months. The business in which the vessels are engaged is under the

general direction of a manager, who resides at Sandefjord, Norway. The manager either comes in person or sends a representative to Seattle at the beginning of each whaling season, and superintends the repairing and outfitting of the vessels; the repairs being made, the supplies purchased, and the crews, with the exception of the gunners, being hired at that place. The business is financed by Balfour, Guthrie & Company, from their branch office located at Seattle. This company likewise disposes of the products of the enterprise; the vessels themselves bringing their catches to a station established on the Alaskan coast, whence the manufactured products are carried to market by commercial carriers. No taxes are paid upon the vessels in the state of South Dakota, nor was it known by any of the witnesses that taxes were paid thereon in the territory of Alaska or elsewhere.

The law is well settled that tangible personal property is subject to taxation in the jurisdiction in which it has its actual situs, regardless of the place of domicile of its owner. *Pullman's Palace Car Co. v. Pennsylvania*, 141 U. S. 18; *Old Dominion Steamship Co. v. Virginia*, 198 U. S. 299. It is equally well settled, also, that such property is taxable at the place of its actual situs, even though it may be used by its owner in interstate commerce, and no distinction in this respect is made between vessels engaged in trade between the ports of the different states and other forms of carriers. *Ayer & Lord Tie Co. v. Kentucky*, 202 U. S. 409; *Southern Pacific Co. v. Kentucky*, 222 U. S. 63.

In the case of *Ayer & Lord Tie Co. v. Kentucky*, this language was used:

"The general rule has long been settled as to vessels plying between the ports of different states, engaged in the coastwise trade, that the domicile of the owner is the situs of a vessel for the purpose of taxation, wholly irrespective of the place of enrollment, subject, however, to the exception that where a vessel engaged in interstate commerce has acquired an actual situs in a state other than the place of the domicile

of the owner, it may be taxed because within the jurisdiction of the taxing authority."

Our own cases are to the same effect: *Northwestern Lumber Co. v. Chehalis County*, 25 Wash. 95, 64 Pac. 909, 87 Am. St. 747, 54 L. R. A. 212; *North American Dredging Co. v. Taylor*, 56 Wash. 565, 106 Pac. 162, 29 L. R. A. (N. S.) 105; *Pacific Cold Storage Co. v. Pierce County*, 85 Wash. 626, 149 Pac. 39; *Canadian Pac. R. Co. v. King County*, 90 Wash. 38, 155 Pac. 416.

In *Northwestern Lumber Co. v. Chehalis County*, it is said:

"Sound reasons exist for the right of the state to tax these vessels that are permanently here transacting local business. They receive the full protection of the local government, and, if mere registry in another port is conclusive against the right to tax here, a boat can operate in our local waters, confined entirely to local business, and, if owned elsewhere, may evade all taxation in this state. Such construction should not be adopted unless imperatively demanded by superior authority. Under the revenue law of this state, personal property is taxed at its *situs*, and without reference to the residence of the owner."

So, in *North American Dredging Co. v. Taylor*, it is said:

"If the trial court was right in holding the state of Washington to be the situs of the property, that fact is decisive of the case, . . . It is the general rule that vessels in state or interstate traffic with no established situs, but going in and out of a port upon a fixed run or as the necessities of the business engaged upon may demand, or when engaged upon no fixed schedule, but sailing from one port to another as a carrier of state, interstate, or international traffic, shall be assessed at the home port, or at the domicile of the owner. . . . However, a vessel may be assessed without reference to the home port or the residence of the principal owner or agent, when it is put to such use as to impress it with a local character. . . . There must be some reasonable limit to the rule that overcomes the ordinary rule of situs when applied to such property, and we think it must be found in the answer to the question whether the presence in Pierce county of the dredger was temporary or merely indefinite. If the

former, it would probably not be taxable.  If the latter, it would be, so long as it was there at a time when the levy was made and the lien attached."

In *Pacific Cold Storage Co. v. Pierce County*, the rule was stated in the following language:

"Stated in another way, the domicile of the owner fixes the situs of the vessel, when it does not appear that it has acquired an actual situs elsewhere."

The case of *Canadian Pac. R. Co. v. King County*, was a controversy over a tax levied upon certain railway cars owned by the Canadian Pacific Railway Company, and which were daily delivered to the Northern Pacific Railway Company and by the latter company hauled over its own tracks from the international boundary line to the city of Seattle and back to such line.  The court held the tax valid, announcing "the general rule to be that tangible personal property is subject to taxation by the state in which it is, no matter where the domicile of the owner may be."

Applying these legal principles to the facts shown, we are constrained to hold these vessels subject to taxation by the taxing authorities of King county.  Were they vessels engaged in a coastwise traffic, or in traffic between the port of Seattle and a foreign port, the question might not be entirely free from doubt.  But the vessels are not common carriers in any sense of the term.  They are fishing vessels, nothing more.  They have but one home port.  From this port they are fitted out and equipped for the only voyages in which they engage, and to it they return when the purposes of the voyages are accomplished.  The business in which they are engaged occupies them less than half the year, and for the remainder of the year they are moored at their home port, where they receive the benefits and protection of the laws of the state.  Clearly, it seems to us, if tangible personal property in the form of seagoing vessels, can ever acquire a situs apart from the domicile of its owner, these vessels have ac-

quired such a situs. This being so, they are subject to taxation at the place of the acquired situs.

We have not overlooked the fact that it is recited in the stipulation that these vessels are only "temporarily in the state of Washington." But this is not controlling. Were it all that appeared, the court would be warranted in treating it as the statement of an ultimate fact and giving it effect accordingly. Here, however, the actual facts are shown, of which this is but a conclusion or deduction. In such a case, the court must accept the facts shown as determinative, and disregard the conclusions which conflict therewith.

The judgment is affirmed.

All concur.