259 P.3d 234 (2011)
FLIGHT OPTIONS, LLC, Petitioner,
v.
STATE of Washington, DEPARTMENT OF REVENUE, Respondent.
No. 84207-8.
Supreme Court of Washington, En Banc.
Argued May 17, 2011.
Decided August 25, 2011.
*237 Scott M. Edwards, Lane Powell, PC, Seattle, WA, for Petitioner.
Brett S. Durbin, Heidi A. Irvin, Office of the Attorney General, Revenue Division, Olympia, WA, for Respondent.
Norman J. Bruns, Michelle DeLappe, Garvey Schubert Barer, Seattle, WA, amicus counsel for Bombardier Aerospace Corporation and Netjets Aviation, Inc.
OWENS, J.
¶ 1 Flight Options LLC challenges the constitutional and statutory authority of the Department of Revenue (Department) to assess apportioned property taxes against the fleet of airplanes it manages. Specifically, Flight Options argues that its airplanes do not have a tax situs in Washington and that the due process clause, U.S. Const. amend. XIV, therefore prohibits assessment of taxes on them. Flight Options further contends that chapter 84.12 RCW prohibits the tax assessment because Flight Options is not an "airplane company" within the statutory definition, because the property has not established a statutory tax situs in Washington, and because Flight Options does not own the fleet of airplanes. We reject each of Flight Options' contentions and affirm the Court of Appeals.

FACTS
¶ 2 Flight Options is a limited liability company with its principal place of business in Richmond Heights, Ohio. The company has purchased and manages a fleet of approximately 200 private aircraft. These aircraft are used as part of two programs: the Jet-Pass program and a fractional ownership program. In 2004, the aircraft landed at or took off from airports in Washington 1,397 times; in 2005, the aircraft landed in Washington 700 times.[1]
¶ 3 The JetPass program is a straightforward charter program. JetPass members deposit a predetermined amount of money with Flight Options. Members notify Flight Options of their itinerary at least 24 hours in advance of their desired departure, and Flight Options provides the airplane and pilot. Flight Options maintains operational control of the airplane at all times. Flight Options thereafter deducts an hourly rate, which varies depending on the airplane used and the current fuel surcharge. Once the deposited funds have been used, the JetPass membership is terminated.
¶ 4 The fractional ownership program is more complicated. Participants are required to sign four contracts: a purchase agreement, a management agreement, a master interchange agreement, and an owner's agreement. Under these contracts, participants purchase an undivided interest in a particular airplane in Flight Options' fleet.
¶ 5 When participants in the fractional ownership program wish to use an airplane, they notify Flight Options at least 10 hours in advance of the departure time. Flight Options then provides an airplane of the same make or model as that in which the participant owns an interest or, if none is available, an alternative airplane. Participants have no right to use the plane in which they own an interest. Flight Options maintains operational control, provides pilots, and arranges for takeoffs and landings.
¶ 6 While participating in the fractional ownership program, participants receive 50 hours of flight time per one-sixteenth ownership interest that are billed at the "Occupied Hourly Rate." Clerk's Papers (CP) at 171. Any hours beyond this assigned number are billed at the "Supplemental Hourly Rate." Id. at 176. In 2004 and 2005, Flight Options charged participants a total of $413 million in *238 hourly rates. In addition to these usage charges, participants also pay a "Monthly Management Fee." Id. at 171, 185.
¶ 7 Participants must agree to participate in an interchange program administered by Flight Options. It is from this interchange program that airplanes are provided to participants, either of the same make and model or, if that is unavailable or if the participant requests a different make and model, another type of airplane.
¶ 8 Flight Options retains possession of all the airplanes in which it sells ownership interests and is responsible for their maintenance and insurance. At the end of 2004, Flight Options owned around a 20-percent interest in the fleet of airplanes it operates.[2] Flight Options also has the right to use the airplanes in which participants own fractional interests and retain all compensation earned through such use, such as through use of the airplanes in the JetPass program.
¶ 9 In June 2005, the Department notified Flight Options by e-mail that it had to submit an annual return in order to avoid a default assessment and 25 percent penalty. Flight Options complied. In December 2005, the Department issued a property tax assessment against Flight Options. It calculated the amount by multiplying the total value of the Flight Options fleet of planes by the percentage of the fleet's takeoffs and landings that took place in Washington. Flight Options subsequently filed a declaratory judgment action, seeking a declaration that the Department lacked the authority to impose a property tax against it. When the Department issued another assessment the following year, Flight Options amended its complaint to include that assessment as well. The parties filed cross motions for summary judgment, and the superior court, by letter opinion, granted the Department's motion. Flight Options sought review in this court, and we transferred the case to the Court of Appeals. The Court of Appeals affirmed the superior court's summary judgment order. Flight Options, LLC v. Dep't of Revenue, 154 Wash.App. 176, 178, 225 P.3d 354 (2010). Flight Options petitioned this court for review, which we granted. Flight Options, LLC v. Dep't of Revenue, 169 Wash.2d 1025, 238 P.3d 504 (2010).

ISSUES
¶ 10 1. Does the due process clause require "fixed routes and regular schedules" in order to establish a taxable situs?
¶ 11 2. Does chapter 84.12 RCW authorize the Department to collect apportioned property taxes from Flight Options?

ANALYSIS

A. Standard of Review
¶ 12 This case involves questions of constitutional interpretation and statutory interpretation and involves review of a summary judgment order. Accordingly, our review is de novo. Lamtec Corp. v. Dep't of Revenue, 170 Wash.2d 838, 842, 246 P.3d 788 (2011), petition for cert. filed, 79 U.S.L.W. 3629 (2011); Optimer Int'l, Inc. v. RP Bellevue, LLC, 170 Wash.2d 768, 771, 246 P.3d 785 (2011).

B. The Flight Options Fleet of Airplanes Acquired a Tax Situs in Washington
¶ 13 The due process clause prohibits a state from taxing property unless that property has acquired a tax situs in that state. Frick v. Pennsylvania, 268 U.S. 473, 496, 45 S.Ct. 603, 69 L.Ed. 1058 (1925). Instrumentalities of interstate commerce, such as airplanes, trains, and inland water vessels, may acquire a tax situs in multiple states. Cent. R.R. Co. of Pa. v. Pennsylvania, 370 U.S. 607, 613-14, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962); Braniff Airways, Inc. v. Neb. State Bd. of Equalization & Assessment, 347 U.S. 590, 600-01, 74 S.Ct. 757, 98 L.Ed. 967 (1954); Ott v. Miss. Valley Barge Line Co., 336 U.S. 169, 170, 174, 69 S.Ct. 432, 93 L.Ed. 585 (1949). The same constitutional analysis applies to each of these instrumentalities, and we may thus rely on case law addressing taxation of each type of instrumentality. *239 Braniff Airways, 347 U.S. at 599-600, 74 S.Ct. 757; Ott, 336 U.S. at 173-74, 69 S.Ct. 432. In determining whether property has acquired a tax situs in a given state, it is appropriate to look at the fleet of instrumentalities as a whole, even if "the specific and individual items of property" entering the state are "not continuously the same, but [are] constantly changing, according to the exigencies of the business." Marye v. Balt. & Ohio R.R. Co., 127 U.S. 117, 123, 8 S.Ct. 1037, 32 L.Ed. 94 (1888); see Alaska Airlines, Inc. v. Dep't of Revenue, 307 Or. 406, 411, 769 P.2d 193 (1989) ("[T]he validity [of a tax assessment against an airline] depends upon whether each airline's aircraft property was part of a unit with situs in this state.").
¶ 14 Flight Options contends that, in order to establish a tax situs in a state, its airplanes must operate over fixed routes and regular schedules. This is incorrect; Flight Options confuses a sufficient condition with a necessary one. In Central Railroad, the United States Supreme Court explained that a state could impose an apportioned property tax on railroad cars that traveled through it on "fixed and regular routes." 370 U.S. at 614, 82 S.Ct. 1297. It also recognized that a tax situs could be created in a state through "[h]abitual employment within the State of a substantial number of cars, albeit on irregular routes." Id. at 615, 82 S.Ct. 1297. Thus, fixed and regular routes are sufficient to create a tax situs for instrumentalities of interstate commerce within a state but are not necessary. See Am. Refrigerator Transit Co. v. Hall, 174 U.S. 70, 71-72, 81-82, 19 S.Ct. 599, 43 L.Ed. 899 (1899) (holding that Colorado possessed authority to tax property of out-of-state business that furnished railroad cars to railroad companies where the cars used in Colorado were not part of regularly run trains, were not run at regular times, and were not constantly the same specific cars).
¶ 15 Flight Options contends that the language relating to "habitual employment" in Central Railroad is refuted by the Court's disposition of the case. 370 U.S. at 613, 82 S.Ct. 1297. This is not so, as a careful reading of the case demonstrates. The Central Railroad Company was a Pennsylvania corporation that owned 3,074 freight cars, some of which were operated in other states by other companies. Id. at 609, 82 S.Ct. 1297. Pennsylvania imposed its property tax against the value of all the cars owned by the Central Railroad Company. Id. at 608, 82 S.Ct. 1297. The company argued that it was constitutionally entitled to reduce the property tax it owed by a proportion corresponding to the amount of time that its cars spent outside Pennsylvania. Id. at 610 82 S.Ct. 1297. The Court began from the premise that "the State of domicile retains jurisdiction to tax tangible personal property which has `not acquired an actual situs elsewhere.'" Id. at 611-12, 82 S.Ct. 1297 (quoting Johnson Oil Ref. Co. v. Oklahoma ex rel. Mitchell, 290 U.S. 158, 161, 54 S.Ct. 152, 78 L.Ed. 238 (1933)). If personal property acquires a tax situs in another state, the commerce clause, U.S. Const. art. I, § 8, cl. 3, precludes the state of domicile from taxing the property to the extent it can be taxed in that other state. Cent. R.R., 370 U.S. at 612, 614, 82 S.Ct. 1297. The question, therefore, became whether the Central Railroad Company's cars had acquired an actual situs in another state. The company had the burden to demonstrate that its property had acquired such a situs. Id. at 613, 82 S.Ct. 1297. The Central Railroad Court held that the company had met its burden with respect to those cars that were run on fixed routes and regular schedules within New Jersey; such use was sufficient to create a tax situs and allow for imposition of an apportioned property tax on the value of the Central Railroad Company's fleet of cars. Id. at 613-14, 82 S.Ct. 1297. However, the Court held that the company had not met its burden with respect to the remainder of its cars that were operated outside Pennsylvania. Id. at 614-15, 82 S.Ct. 1297. The Central Railroad Company had shown that those cars were habitually employed outside Pennsylvania but had failed to produce evidence of their "habitual presence ... in particular nondomiciliary States." Id. at 615, 82 S.Ct. 1297. The Court clearly indicated that the latter showing would have been sufficient. Id. Flight Options' argument to the contrary is unpersuasive, particularly since it fails to account for the Court's holding in American Refrigerator *240 Transit, which approved a property tax by a nondomiciliary state on the basis of the habitual use of property in that state. 174 U.S. at 71-72, 81-82, 19 S.Ct. 599.
¶ 16 Though Flight Options did not specifically raise the issue in the context of its due process clause challenge, we nonetheless proceed to consider whether its use of its fleet of airplanes in Washington was sufficiently habitual to create a tax situs in Washington. Due process requires "`some minimum connection'" between the taxing state and the property to be taxed, Quill Corp. v. North Dakota ex rel. Tax Comm'r, 504 U.S. 298, 306, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (quoting Miller Bros. Co. v. Maryland, 347 U.S. 340, 344-45, 74 S.Ct. 535, 98 L.Ed. 744 (1954)), and that "`the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State.'" Braniff Airways, 347 U.S. at 600, 74 S.Ct. 757 (quoting Ott, 336 U.S. at 174, 69 S.Ct. 432). We address these requirements in turn.
¶ 17 The minimum contacts test applicable under the due process clause "centrally concerns the fundamental fairness of governmental activity." Quill, 504 U.S. at 312, 112 S.Ct. 1904. Notice and fair warning are the touchstones of the due process analysis. Id. The magnitude of the contacts necessary to meet the minimum contacts is quite low. In Smoot Sand & Gravel Corp. v. District of Columbia, 84 U.S.App.D.C. 367, 174 F.2d 505, 505-06 (1949), the Court of Appeals for the District of Columbia held that the district could assess an apportioned property tax against a fleet of water vessels that entered the district an average of once per day. See Canadian Pac. Ry. Co. v. King County, 90 Wash. 38, 44, 46, 155 P. 416 (1916) (approving assessment of property tax where three railroad cars entered Washington each day, though the three were not continuously the same). Flight Options' average of two daily visits to the state of Washington in each year was more than adequate to put it on notice that it would be subject to taxation here.
¶ 18 Further support for the existence of minimum contacts can be found from the large number of cases decided on dormant commerce clause grounds. While the due process clause and the commerce clause are animated in part by differing concerns, Quill, 504 U.S. at 312, 112 S.Ct. 1904, the inquiries are not mutually exclusive. In Trinova Corp. v. Michigan Department of Treasury, 498 U.S. 358, 111 S.Ct. 818, 112 L.Ed.2d 884 (1991), the United States Supreme Court explained that the dormant commerce clause analysis set forth in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), "encompasses as well the due process requirement" of minimum contacts. Trinova, 498 U.S. at 373, 111 S.Ct. 818. In other words, a finding that the imposition of a tax does not violate the dormant commerce clause is sufficient to establish that the imposition also does not violate the due process clause, even though the converse is not true. Quill, 504 U.S. at 313 n. 7, 112 S.Ct. 1904. The minimum contacts requirement of the due process clause is contained in the "substantial nexus" requirement of the test articulated in Complete Auto Transit. 430 U.S. at 279, 97 S.Ct. 1076. We recently held that 50 to 70 visits by sales employees of a company over a seven-year period was sufficient to establish a substantial nexus with the State. Lamtec, 170 Wash.2d at 841, 851, 246 P.3d 788. Other states have reached similar conclusions. See, e.g., Fall Creek Constr. Co. v. Dir. of Revenue, 109 S.W.3d 165, 171 (Mo. 2003) (finding that 42 arrivals or departures of airplanes, together with 24 overnight stays, in one year established a substantial nexus with the state). Flight Options' average of 700 visits to Washington far exceeds the number of visits held sufficient in Lamtec.
¶ 19 We turn next to whether "`the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State.'" Braniff Airways, 347 U.S. at 600, 74 S.Ct. 757 (quoting Ott, 336 U.S. at 174, 69 S.Ct. 432). The fact that the tax is apportioned so as to limit its assessment to a proportion of the value of the property commensurate with the proportion of time the property spent in Washington goes a long way toward meeting this *241 requirement. See Ott, 336 U.S. at 174, 69 S.Ct. 432. While in Washington, Flight Options planes "enjoyed the benefits and protection of [Washington] criminal laws, the provision of search and rescue services if needed and opportunities for further commerce through contacts with [Washington]." Alaska Airlines, 307 Or. at 412, 769 P.2d 193. We have little difficulty determining that the apportioned property tax imposed on the Flight Options planes is reasonably related to the opportunities, benefits, and protections afforded by the state.
In sum, we hold that a state may impose an apportioned property tax on airplanes habitually entering the state, even where those airplanes do not operate over fixed routes or on regular schedules. We further hold that an average of two visits to the state each day is sufficiently habitual to establish a tax situs.

C. Chapter 84.12 RCW Authorizes Imposition of the Property Taxes at Issue
¶ 21 Flight Options contends that the Department lacks statutory authority to assess the challenged property taxes. Specifically, Flight Options contends that (1) it is not an "`[a]irplane company,'" as defined by RCW 84.12.200(3); (2) the airplanes are not "situate" in Washington, as required by RCW 84.12.200(12); and (3) it does not own the airplanes as it argues is required by RCW 84.40.020 and RCW 84.12.210. Each of these arguments requires that we engage in statutory interpretation. When interpreting a statute, our fundamental objective is "to discern and implement the intent of the legislature." State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). We do so by giving effect to the plain meaning of a statute, which may be gleaned "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 11, 43 P.3d 4 (2002). If, after this inquiry, the statute is "susceptible to two or more reasonable interpretations," the statute is ambiguous. Burton v. Lehman, 153 Wash.2d 416, 423, 103 P.3d 1230 (2005). However, a statute is not ambiguous merely because two or more interpretations are conceivable. Id. We have long held that any ambiguity in a tax statute is construed in favor of the taxpayer. Vita Food Prods., Inc. v. State, 91 Wash.2d 132, 134, 587 P.2d 535 (1978).
¶ 22 We begin our interpretation with the context in which the relevant statutes appear. Chapter 84.12 RCW requires that the Department annually assess the "operating property" of certain utilities and transportation companies. RCW 84.12.270. One type of "[o]perating property" subject to assessment by the Department is aircraft owned, controlled, operated, or managed by an "`[a]irplane company.'" RCW 84.12.200(3), (12). Personal property must be "situate within the state of Washington," and, for personal property used in more than one state, the value to be assessed must be in proportion to the property's use in Washington. RCW 84.12.200(12), .300. Construing these statutes together, chapter 84.12 RCW requires, generally, that the Department assess taxes against an apportioned value of the aircraft of airplane companies, so long as those aircraft are situate in Washington.
¶ 23 Flight Options is undoubtedly an "airplane company" within the plain meaning of the definition of that term set forth in RCW 84.12.200(3). An airplane company is any person or entity
owning, controlling, operating or managing. . . personal property, used or to be used for or in connection with or to facilitate the conveyance and transportation of persons and/or property by aircraft, and engaged in the business of transporting persons and/or property for compensation, as owner, lessee or otherwise.
RCW 84.12.200(3), (10). To satisfy the first requirement, the person or entity need only do one of the four options listed: own, control, operate, or manage personal property. The record leaves no doubt that Flight Options manages all the airplanes in its fleet; it maintains the entire fleet at its headquarters and determines which specific airplane will be dispatched to which customer. Though we do not find the characterization binding on our inquiry, we find further support for our conclusion in the fact that Flight Options *242 refers to itself as the "Manager" and charges a "Monthly Management Fee" in the "Management Agreement" it requires participants in the fractional ownership program to sign. CP at 146, 171. Because Flight Options manages the airplanes, we need not determine whether it also owns, controls, or operates them.
¶ 24 Flight Options does not dispute that its airplanes are used for the conveyance and transportation of persons, nor could it. Instead, it argues that it is not "engaged in the business of transporting persons . . . for compensation," RCW 84.12.200(3), because it is actually engaged in the business of selling fractional ownership interests. This is not, however, an either-or distinction. While Flight Options may well be in the business of selling fractional ownership interests in airplanes, it is also engaged in the business of transporting persons for compensation. This is obvious in the context of the JetPass program, in which customers pay Flight Options an hourly rate in exchange for transportation. Precisely the same thing occurs in the context of the fractional ownership program. Fractional owners pay Flight Options an hourly rate in exchange for transportation on an airplane. From this it is apparent that Flight Options is engaged in the business of transporting persons for compensation. Flight Options therefore falls squarely within the definition of an "airplane company" subject to assessment by the Department.
¶ 25 The next question is whether Flight Options' airplanes were "situate within the state of Washington." RCW 84.12.200(12). "There is nearly universal agreement that personal property is `situated' for tax purposes at its tax situs." Mesa Leasing Ltd. v. City of Burlington, 169 Vt. 93, 96, 730 A.2d 1102 (1999). "Situate" and "situated" are synonyms, Bryan A. Garner, A Dictionary of Modern Legal Usage 811 (2d ed. 1995), and we therefore construe "situate" to mean "having a tax situs." We have never held that the statutory requirement that property have a tax situs in Washington is more extensive than the due process clause requirement. In Canadian Pacific, we relied exclusively on United States Supreme Court cases to determine the situs of railroad cars. 90 Wash. at 43-44, 155 P. 416. Similarly, in United States Whaling Co. v. King County, 96 Wash. 434, 436-37, 165 P. 70 (1917), we noted that Washington cases establishing tax situs "are to the same effect" as United States Supreme Court cases. The last case relied on by Flight Options, Guinness v. King County, 32 Wash.2d 503, 506, 202 P.2d 737 (1949), applied the since-abandoned "home port doctrine," see Japan Line, Ltd. v. County of Los Angeles, 441 U.S. 434, 443, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979), under which moveable personal property could only be assessed at the home port of the owner. The home port doctrine has given way to a scheme allowing for "fair apportionment" of tax revenues among the states. Id. at 442, 99 S.Ct. 1813; see Alaska Freight Lines, Inc. v. King County, 66 Wash.2d 360, 363-64, 402 P.2d 670 (1965) (noting that situs requirements for non-oceangoing vessels had "been relaxed to permit . . . tax apportionment between states" and citing to federal cases). We conclude that the requirement in RCW 84.12.200(12) that property be "situate within the state of Washington" is coextensive with the due process clause requirement that property have a tax situs in Washington before it can be taxed. As discussed above in the context of the due process clause, the Flight Options fleet of airplanes has established a tax situs in Washington.
¶ 26 The final question in this case is whether the Department may assess property taxes against a nonowner of the airplane. We assume, without deciding, that Flight Options does not own the airplanes in its fleet.[3] Nonetheless, neither of the statutes cited by Flight Options, RCW 84.40.020 and RCW 84.12.210, precludes the Department's assessment of taxes at issue here.
¶ 27 RCW 84.40.020 provides, in relevant part, that "[a]ll personal property in this state subject to taxation shall be listed *243 and assessed every year, with reference to its value and ownership on the first day of January of the year in which it is assessed." As Flight Options argues, that statute provides that all personal property is only assessable to the owner of the property. RCW 84.12.270, however, when construed in light of the definitions set forth in RCW 84.12.200, is a more specific statute that plainly permits the Department to assess property tax against a nonowner that controls, operates, or manages the property. It is well settled that a more specific statute prevails over a general one should an apparent conflict exist. Residents Opposed to Kittitas Turbines v. Energy Facility Site Evaluation Council, 165 Wash.2d 275, 309, 197 P.3d 1153 (2008). This interpretation gives effect to the plain language of a number of statutes expressly permitting taxation of nonowners of property. See, e.g., RCW 84.12.270; RCW 84.40.065 (permitting assessment of nonowners who possess or control ships or vessels); RCW 84.16.040 (permitting assessment of nonowners who operate private railway cars). Because a more specific provision governs assessment of the operating property of airplane companies, RCW 84.40.020 does not preclude assessment of the property tax on the fractionally owned airplanes against Flight Options.
¶ 28 RCW 84.12.210 is no more helpful to Flight Options. That statute provides that
[p]roperty used but not owned by an operating company shall, whether such use be exclusive or jointly with others, be deemed the sole operating property of the owning company.
RCW 84.12.210. By its terms, this provision only applies where there are two companies (i.e., an "operating company" and an "owning company"). The term "`[c]ompany'" is defined to mean, as relevant here, "airplane company." RCW 84.12.200(11). Fractional owners of the airplanes cannot be airplane companies, however, because they are not "engaged in the business of transporting persons and/or property for compensation." RCW 84.12.200(3). The master interchange agreement specifically prohibits this. CP at 192 ("Participant [(fractional owner)] . . . will not use such Interchange Aircraft . . . to provide transportation of passengers or cargo in air commerce for compensation or hire except in accordance with the provisions of Section 91.501 and 91.321 of the [federal aviation regulations].").[4] Because the fractional owners cannot be airplane companies, Flight Options is the only "company," as that term is defined by RCW 84.12.200(11), and RCW 84.12.210 is inapplicable.

CONCLUSION
¶ 29 We conclude that the Department properly assessed Flight Options an apportioned property tax based on the value of the fleet of airplanes it manages. That fleet of airplanes acquired a tax situs in Washington through habitual use of the State's airspace, landing facilities, and other services and benefits. Further, chapter 84.12 RCW plainly authorized the imposition of the tax on Flight Options. We affirm the Court of Appeals.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, GERRY L. ALEXANDER, TOM CHAMBERS, concurs in result only, MARY E. FAIRHURST, JAMES M. JOHNSON, DEBRA L. STEPHENS, and CHARLES K. WIGGINS, Justices.
NOTES
[1] This was not a decrease in the number of visits. The Department simply changed the metric it employed from both landings and takeoffs to just landings.
[2] This interest includes planes owned in whole by Flight Options as well as unsold fractional interests.
[3] It is undisputed that Flight Options owns a 20-percent interest in its fleet of airplanes. The Department further contends that the "common indicia of ownership" demonstrate that Flight Options is properly regarded as the "`owner'" of the entirety of the property for purposes of taxation. Answer to Pet. for Review at 9.
[4] The cited sections of the federal aviation regulations do not permit any action that would amount to being "engaged in the business of transporting persons and/or property for compensation." RCW 84.12.200(3). 14 C.F.R. § 91.501(b) identifies nine operations for which fractional owners may employ their airplane, most of which prohibit any charge or fee. 14 C.F.R. § 91.321 merely authorizes receipt of payment for carrying a candidate for election where federal, state, or local law require such payment.